BERRY *v.* HARBOR SPRINGS RAILWAY CO.

1. RAILROADS—NEGLIGENCE—GROSS NEGLIGENCE.
  Where defendant's engineer saw plaintiff some distance ahead walking along a path close beside defendant's tracks, and proceeded slowly, with his engine under control, and both hands engaged in operating it and in ringing the bell, so he could not blow the whistle, and where plaintiff, whose attention was engaged by another passing train, failed to hear the bell ring, and stepping upon the track or dangerously near it, about ten feet in front of the locomotive, was struck before the engineer could stop, and it appeared that the engine ran only a few feet after striking plaintiff, who was knocked down but not crushed, the engineer could not be held guilty of gross negligence.

2. SAME—CONTRIBUTORY NEGLIGENCE.
  Plaintiff was guilty of contributory negligence as matter of law.

Error to Emmet; Shepherd, J. Submitted January 11, 1912. (Docket No. 49.) Decided December 17, 1912.

Case by Helen Berry against the Harbor Springs Rail-

way Company for personal injuries. Judgment for plaintiff. Defendant brings error. Reversed; new trial denied.

*Halstead & Halstead*, for appellant.

*W. S. Mesick* and *G. E. & M. A. Nichols*, for appellee.

McAlvay, J.  This is an action on the case brought by plaintiff against defendant to recover damages for personal injuries to plaintiff, claimed to have been caused by the negligence of defendant's servants.  A verdict was rendered in the case in favor of plaintiff.  From a judgment entered upon such verdict defendant has brought the case before this court upon a writ of error, asking a reversal on account of errors, which are assigned.  As far as may be necessary in the consideration of this case to state any facts, the court will accept the statement as made in the brief of the appellant, for the reason that the appellee has ignored Rule No. 40 (68 N. W. viii) of this court, and not pointed out in a single instance wherein it is claimed the appellant's statement is incorrect, and has made a new statement of great length.

The injury to the plaintiff occurred in the village of Harbor Springs, Emmet county, where defendant owns and operates a narrow-gauge logging road, which crosses the tracks of the Grand Rapids & Indiana and Bay street at right angles.  On defendant's main track two switches are placed to connect with side tracks, one north of the Grand Rapids & Indiana tracks and one south of those tracks.  These switches are operated from a small target house.  The north switch is about 120 feet north of this operating station.

On the day of the injury, plaintiff approached defendant's main tracks from the east, and saw an engine pushing a car of coal ahead of it approaching from the south, the engine heading north.  Plaintiff stepped on the east side of the defendant's track, and waited for this engine

and car to pass going north. . While waiting she saw a
man, supposed by her to be in the employ of the defend-
ant, in this target house. She knew what the target
house was used for, and understood he was there for the
purpose of turning the switch on defendant's track. She
knew that the north switch could be operated from there,
and knew of no other switch to the north that could be so
operated. She was familiar with the location of the main
line and the switch tracks of defendant's road, having often
walked on both. After the engine and car of coal had
passed plaintiff, she continued on west in the path and on
the north side of what is known as Bay street. Defend-
ant's switch track, from the north switch stand, above
mentioned, curves in a southwesterly direction, and as it
approaches Bay street curving to the westward it straight-
ens out and runs parallel with such street. This curve,
which starts at defendant's north switch stand, ends where
this switch track meets the path at Bay street, and is about
175 feet in length. This engine and car continued on its
course up the track far enough to permit the switch to be
thrown by the man in the operating station, and let them
in on this curved track. This he did, and then went across
to the switch track to meet the engine and car, upon which
he acted as a brakeman, to cut the car off for the lower
switch. When the switch was thrown, the engine backed
in on the switch track, pulling the car of coal. This was
a small, light engine of low gear, and adapted to climbing
grades. The track was slightly downgrade, and, as soon
as it got onto the switch track with a car of coal, the
steam was cut off, and it coasted slowly down the hill,
with the tender first, at a speed estimated as $2\frac{3}{4}$ to 4
miles per hour. It was intended to place the car of coal
further down by cutting it off, and making what is known
as a "flying switch." The grade on the switch track as
it descends from the north switch stand is 2.3 per cent.,
for a short distance, then two per cent., then on a level at
a point where this track comes in north of Bay street, and

continues along parallel with it to the place where the injury occurred.

Plaintiff, continuing on the path as described, came to and passed the point where this switch track approaches Bay street, and proceeded along said path to the place where she was injured, which she designates as exactly opposite the south switch. As she was coming towards the point where the switch track parallels Bay street, some piles of railroad ties obstructed her view of this switch track higher up. She could see some distance up the track where it straightens out, and says that at that point she looked and saw nothing approaching. She continued along her way to the place where the path comes to the side of the switch track on Bay street, and proceeded along such path without any further observation. The engineer on the approaching engine saw plaintiff when she came into view at the end of the pile of railroad ties. The brakeman on the engine also saw her at the same time. The engineer was standing up in his cab watching her from that time until the accident, with nothing to obstruct his view, with one hand on the air brake lever, and ringing the bell continuously with the other hand; the air pump making a noise which could be heard 35 or 40 rods. She walked the whole distance with her back to the engine approaching her from behind along, or near, the path on the side of the track toward Bay street, which is open and level for the whole distance it is paralleled by the track, without turning or looking back. The record shows that she did not walk in the path all of the time, but zigzagged as she went along toward the street and toward the railroad track. The engineer had the engine under control, and at one time applied the brakes because he thought plaintiff was getting too near the track. She proceeded in this manner for a distance of about 100 feet from the place where, as stated, she looked up the track as she approached it, when, as is claimed by the men on the engine, she suddenly stepped between the rails, the engine being then ten feet from her,

and, although the engineer applied his air brakes, reversed his engine and pulled the throttle wide open, and the engine was stopped within that distance, she was struck, and her ankle was injured. No part of her person went under the tender, or was crushed by it. Her testimony is that she was walking in the path, and did not step over the rail onto the track. She gives as her reason why she did not walk farther away from the track that the street was dusty. Plaintiff claimed that her attention was distracted by a train which passed, going west, on the Grand Rapids & Indiana tracks, about 30 feet away from defendant's road, before she was struck. All the other witnesses testify that no such train passed until five minutes or more after she was hurt. The plaintiff testified that she was familiar with all these surroundings, and knew that trains were operated on these tracks; that she did not look behind her for the whole distance after she made the first observation until she was injured. The record shows that this was for a distance of about 100 feet, the greater part of which was traversed by her parallel with the railroad track. It appears without dispute from the record and the exhibits in the case that this path parallel with the railroad track was a well-defined and beaten path, at a sufficient distance from the tracks to be without danger of injury from a passing engine, and also that on this side south from the track the way for the entire distance was smooth and unobstructed for a width sufficient for teams to pass each other.

The material errors assigned and relied upon by defendant are that the court erred in refusing to direct a verdict for the defendant, in allowing the amendments of the declaration whereby the charge against defendant was changed from one of "ordinary negligence" to "gross negligence," upon the charge of the court upon the question of negligence and the measure of damages, the refusal to charge upon these questions as requested by defendant, and the refusal of the court to grant a new trial. The amendments referred to were allowed after all the

evidence in the case had been introduced, changing the averments in the declaration from " ordinary negligence" to "gross negligence," notwithstanding the objection of defendant that such amendments introduced a new and distinct cause of action. It may be said that the offer and allowance of these amendments was vital and important, and at this stage of the trial was, to say the least, unusual and of the most serious import to the defendant. Upon this record, however, we do not need to determine the proposition urged by defendant, that by the amendments an entirely new cause of action was presented, and therefore under our practice they were improperly allowed.

The undisputed facts in the case show that the engineer was operating this small geared engine with great care, from the time the plaintiff approached the railroad down to the time when the injury occurred; that the engine was practically moved no faster than plaintiff walked; that she was a normal person, in possession of all her senses, traveling over a road which she was well acquainted with and walking in this path, which ran far enough from the rails for perfect safety; that the bell on the engine was ringing continuously, the brakes were always under control, and the air pump working with a great noise. The engineer was justified in acting upon the assumption that plaintiff would not put herself in a place of danger, and had no reason to believe that plaintiff would walk so near to the rails as to be injured, much less step over the rail. The fact that the engine was stopped within ten feet after she was discovered to be in a place of danger is evidence of itself that it was under control. Both of the engineer's hands were engaged in doing those things which were necessary to warn plaintiff of the approach of the engine, and at the same time keep absolute control of the machine. Complaint is made that he did not blow the whistle. Not being provided with more than the ordinary number of hands, which were occupied as we have already stated, the blowing of the whistle was impossible.

The record shows that after it was discovered that plaintiff had got into a place of danger the engineer did everything that could have been done to prevent her injury, and was not guilty of reckless, wanton, and wilful conduct. This court has recently defined what is "gross negligence," under somewhat similar circumstances to those of this case. Mr. Justice OSTRANDER, speaking for the court, said:

"The term 'gross negligence' has been used in cases decided by this court, and has a definite meaning when referred to as authorizing a recovery for negligent injury, notwithstanding the contributory negligence of the plaintiff. It means the intentional failure to perform a manifest duty, in reckless disregard of the consequences as affecting the life or property of another. It also implies a thoughtless disregard of consequences, without the exercise of any effort to avoid them. *Schindler* v. *Railway Co.*, 87 Mich. 400, 411 (49 N. W. 670); *Denman* v. *Johnston*, 85 Mich. 387, 396 (48 N. W. 565). In *Labarge* v. *Railroad Co.*, 134 Mich. 139 (95 N. W. 1073), the cases are reviewed and the doctrine of 'gross negligence,' as stated and defined in *Richter* v. *Harper*, 95 Mich. 221, 225 (54 N. W. 768), is approved." *Knickerbocker* v. *Railway Co.*, 167 Mich. 596, 602 (133 N. W. 504, 507).

A careful examination of all the testimony in the record satisfies us that it does not disclose any evidence of "gross negligence" upon the part of defendant, and the court was therefore in error in its charge to the jury that there was evidence in the case, which, if believed by them, would warrant a verdict against defendant upon the ground of "gross negligence."

The defendant insisted upon the trial that the evidence disclosed contributory negligence on the part of the plaintiff, and requested the court to instruct a verdict in its behalf for that reason, which request was refused. It will not be necessary to repeat what already appears from the statement of facts we have given, the conduct of this plaintiff, as she went along this path. The presence of the railroad track was of itself a warning of danger, and required the exercise on the part of plaintiff of all her senses neces-

sary to discover whatever danger might be imminent from an approaching train. The testimony of all the eye-witnesses and plaintiff's testimony is in accord, and shows that she proceeded all this distance without looking behind her. It is also undisputed, as shown by the record, including her testimony, that there was ample space along the track for her to walk with perfect safety. Of her own accord, without any regard to her safety, it appears that she put herself either over the rail or so close to the rail that she was struck by the end of the tender coming from behind. If, in fact, a train on the Grand Rapids & Indiana track passed shortly before the injury, upon which there is a dispute in the testimony, this would be no excuse for the utter disregard of her own safety. Our conclusion is that from the evidence in the case the plaintiff was guilty of contributory negligence as a matter of law, and on that ground, as requested by defendant, the court should have so charged the jury.

Other errors assigned, in view of our conclusion, do not require discussion. The judgment of the circuit court is reversed, and, it being admitted in the brief for plaintiff that the testimony offered at the trial could not have been and cannot now be otherwise or different, no new trial is granted.

MOORE, C. J., and STEERE, BROOKE, STONE, and OSTRANDER, JJ., concurred. BIRD, J., did not sit.