BONNER v. GRAND TRUNK WESTERN RAILWAY CO.

1. RAILROADS—NEGLIGENCE—EVIDENCE—GROSS NEGLIGENCE.
   Evidence that plaintiff, in crossing defendant's double track near the station in a city, as the gates were being lowered, took a position in the space between the rails of the west-bound track to wait for a passing train, and was struck by a freight train, *held*, to show contributory negligence, and not to warrant the submission of the question of gross negligence to the jury.

2. SAME—SUBSEQUENT OR DISCOVERED NEGLIGENCE.
   Defendant's train men were justified in assuming that he had taken the precaution to look before. he went on the west-bound track and would step aside in due time.

Error to Ingham; Collingwood, J. Submitted January 10, 1916. (Docket No. 79.) Decided June 1, 1916.

Case by Alfred Bonner against the Grand Trunk Western Railway Company, a corporation, for per-

sonal injuries.  Judgment for plaintiff.  Defendant brings error.  Reversed.

*Harrison Geer* (*W. K. Williams,* of counsel), for appellant.

*Jason E. Nichols,* for appellee.

STEERE, J.  Between 4 and 5 o'clock on the afternoon of January 17, 1914, plaintiff, while on his way south to a nearby grocery store, went upon defendant's double main track railroad, at its right-angled intersection with Washington avenue, which runs north and south through the city of Lansing, just as the crossing gates were being lowered, and stood between the rails of the north, or west-bound, track, awaiting the passage into the passenger station immediately to the east, of defendant's No. 8 fast Pullman express train from the west.  While so standing he was struck and injured by a freight train of two or three cars, going westward unobserved by him upon the west-bound track.  The case was tried in the circuit court of Ingham county before a jury, and resulted in a verdict for plaintiff for $600 damages.

At conclusion of plaintiff's testimony defendant offered no proofs, its counsel contending that defendant was entitled to, and moved for, a directed verdict by the court in its favor, because plaintiff's own evidence disclosed that he was guilty of contributory negligence, precluding recovery, as a matter of law, and because "no evidence had been introduced on the trial which showed or tended to show that the defendant company was guilty of any gross negligence."  This motion was denied, and the court, while charging the jury as a matter of law that plaintiff was guilty of contributory negligence in standing between the rails on the west-bound track, refused to charge that there was no evidence tending to show gross negligence on the part of

defendant's servants—leaving that question to the jury as an issue of fact.

Defendant, in bringing the case to this court for review on writ of error, relies on three assignments, which practically involve but the one question of whether there was any evidence tending to prove gross negligence, and which are as follows:

"That it was error for the trial judge to hold on our motion for a directed verdict that the question of gross negligence on the part of the defendant was for the jury; *secondly*, in refusing to give our request to charge numbered 1 to the effect that there was no evidence in the case of gross negligence upon the part of the defendant; *third*, in submitting the question of gross negligence to the jury in paragraph No. 3 of the general charge."

Defendant's motion and requests are in substance and effect a demurrer to plaintiff's evidence, admitting the truth of the testimony and those conclusions of fact which may legitimately be drawn from it, but denying that there is any evidence from which a jury can properly proceed to find the fact of gross or discovered negligence, without which plaintiff, upon whom the onus of proof is imposed, cannot recover. That a jury has no right to assume the truth of any material fact, unless it is established by legal evidence, and it is therefore error for the court to instruct the jury they may find a claimed fact of which no evidence is produced from which it may legally be inferred, is a well-settled rule of ancient origin. Plaintiff's testimony clearly shows that his was the primary negligence, and his counsel, in support of the theory that defendant's employees were guilty of subsequent, discovered, or gross negligence superseding that of plaintiff, says in his brief:

"There is but one question in this case. The plaintiff negligently went upon the sidewalk between the rails of the west-bound track at this crossing, stood

there intently watching the passenger train going by. It was broad daylight. The depot was a few rods east. The freight engine and two cars were switching and running west. The engineer and fireman, or the person running that engine, must have seen the danger which the plaintiff was in. No extraordinary effort was made to attract plaintiff's attention, as Mr. Williams would have noticed it, if there had been."

At the place and under the surrounding circumstances the party running that engine at this guarded crossing near by the station was not guilty of even ordinary negligence in assuming persons crossing or standing upon the track as he approached would exercise commensurate vigilance to care for their own safety, and the only pertinent question in that connection would be whether the person running the engine must have seen or anticipated that plaintiff would cling to this danger zone until the approaching engine struck him. That the train was not moving rapidly, and the engineer acted promptly when plaintiff's negligence was actually discovered by him, is indicated in the following circumstances of the accident as related by plaintiff's counsel:

"As he was about to start from the place where he had stood all the time looking at the incoming and passing train from the west, and without warning or signal, a freight engine with two cars, coming from the east and running on the west-bound track, ran upon him, jostling and tumbling him across the street to the west side thereof, some 20 feet, when the engine stopped and the plaintiff was picked up by the engineer and fireman at the side of the engine in an unconscious condition."

How long he stood there, or just where he stood, is not very satisfactorily shown, either by his testimony or that of Williams, who were the only witnesses to the accident; neither does their evidence show that warning signals were not given. Williams was walking south on the easterly side of Washington avenue,

two or three rods behind plaintiff, and waited on the walk just north of the north track for the two trains to pass. The passenger train reached the crossing about the time he arrived, and he saw the freight train also.

"It was in plain sight, approaching the crossing and moving right along."

. He knew plaintiff by sight, having seen him working on the streets and noticed that, like himself, he stopped for a train or trains to pass; that when he last noticed him he stood on the track.

"  *  *  *   Q. The north track?

"A. Yes, he stood there; I do not know how long, because I was paying no attention and not thinking of any such thing"

—for he had no idea that he was in danger when witness saw the freight train approaching. Of this he testifies:

"He (plaintiff) stopped for a little space, and of course I turned my head to see the other train. I knew I would have to wait for that to pass before I could go on. That was the freight train coming from the east.   *  *  *

"Q. You paid no attention to him, did you?

"A. Of course not; I didn't pay any attention to him.

"Q. And whether or not he stepped there between the two rails, the two tracks, and stood in between the two tracks, you don't know; you don't know whether he did that or not?

"A. No."

Williams did not see the accident, his attention being attracted to the passing trains, which compelled him to stop, and his first knowledge of it was the sudden stopping of the freight train, and he first saw plaintiff again when either the engineer or fireman of the train was picking him up. Questioned as to signals, he said:

"I don't know as I heard the engine of that freight train sound any bell or whistle before it struck Mr. Bonner. There was a bell going all the while on the other train, and I possibly would not have noticed. * * *

"Q. (on cross-examination). And you would not say that the bell on this engine was not rung; when I say this engine, I mean that freight, west-bound?

"A. No, sir.

"Q. You were not paying any attention to it, whether it was or not?

"A. No; I saw the freight coming; I was in a place of safety, and was not paying any attention to what the engine was doing. * * *"

Plaintiff's testimony showed that he was a man over 70 years of age at that time, living on the first east and west street north of these tracks, and had been employed by the city as a street sweeper, working ten hours a day, on that section of Washington avenue, for about a year before the accident; his territory extending across defendant's tracks, which he passed over several times each day while engaged in his work. He was familiar with conditions there, knowing that many trains passed in each direction daily, and a train was liable to go over that crossing from either direction at any time. He also knew which track was used by the east and which by the west bound trains, and understood the use and purpose of the crossing gates. They were lowered on that occasion just as he reached the tracks, the north gate not being yet down when he passed it, and he stopped inside the gates to wait for the passenger train from the west, which he saw approaching from the Grand river bridge near by. He at first testified that he stopped upon the walk running between the two tracks, which were about ten feet apart, and stood still there, although he might have stepped back a little—"might have stepped back somewhere." This, however, he corrected upon the following day, with the explanation, "I didn't have my

head right yesterday," and testified that he stopped on the west-bound track, standing there until the train passed by, or until he was struck; that it was broad daylight, not cold, and he was not in a hurry; that he had nothing over his ears, his hearing was good, and ·sight all right, though he saw clearest with the right eye, but subsequently changed this to his left, and asserted that he had not said his right eye was his good eye; that he looked all around him when he first arrived at the crossing, and there was nothing in sight, except the train coming from the west, and he did not look to the east after he had looked to the west and seen No. 8 coming; that while waiting for the east-bound passenger train to pass, and watching it, he was struck by the other train, which he had not seen or heard or known anything about.

Plaintiff's evidence contains no showing as to improper speed of the freight train when it approached the crossing, or of inattentive conduct of those upon the engine, nor of anything, except that he was watching the other train, to indicate or give notice to the engineer that he could not or would not look out for his own safety and step out of the way. The engineer had a right to assume plaintiff had exercised reasonable precautions to observe if a train was approaching along the track on which he stood and would seasonably step aside. Until it became apparent that he would not do so, there could be no discovered negligence. Neither is it shown that, after plaintiff's negligence and resulting actual danger was or should have been discovered by the engineer, he did not promptly make every effort possible to stop and avoid the accident. We find nothing in any of plaintiff's evidence which, under the rules of law and definition of gross negligence recognized and declared by this court, shows or tends to show that there was on the part of the

engineer of this freight train, "after the discovery of plaintiff's negligence," any "intentional failure to perform a manifest duty, in reckless disregard of consequences as affecting the life or property of another," nor a "thoughtless disregard of consequences without the exercise of any effort to avoid them."

After a careful examination of this record, in the light of the following decisions, we are unable to discover any probative support in plaintiff's evidence for the charge that defendant's agents were guilty of wanton or gross negligence, which raised an issue for the jury, or would as a matter of law sustain a judgment entered by the court on a verdict in which the jury so found: *Lake Shore, etc., R. Co.* v. *Miller,* 25 Mich. 274, 278, 279; *Freeman* v. *Railway Co.,* 74 Mich. 86 (41 N. W. 872, 3 L. R. A. 594) ; *Knickerbocker* v. *Railway Co.,* 167 Mich. 596 (133 N. W. 504) ; *Putt* v. *Railway Co.,* 171 Mich. 216 (137 N. W. 13) ; *Berry* v. *Railway Co.,* 173 Mich. 181 (138 N. W. 1038) ; *Cardinal* v. *Railway Co.,* 174 Mich. 22 (140 N. W. 530). Defendant was entitled to a directed verdict on the grounds stated in its counsel's motion and requests, timely made therefor. The judgment is therefore reversed, without a new trial.

STONE, C. J., and KUHN, BIRD, MOORE, BROOKE, and PERSON, JJ., concurred. OSTRANDER, J., did not sit.