HOLSTINE v. DIRECTOR GENERAL OF RAILROADS.

[No. 11,006.    Filed February 16, 1922.]

1. APPEAL.—*Review.*—*Ruling Sustaining Demurrer to Complaint.*—*Scope of Review.*—The rule that a party demurring to a complaint waives all objection not set out in the memorandum accompanying the demurrer, and cannot avail himself on appeal of defects not so pointed out, does not apply where the demurrer has been sustained. p. 586.

2. RAILROADS.—*Injuries to Children on Tracks.*—*Attractive Nuisance Doctrine.*—*Applicability.*—Where a child, playing about a pile of sawdust near the tracks of a railroad company and on its right of way, wandered upon the tracks and was killed, the attractive nuisance doctrine does not apply to the father's action for wrongful death, as the child was not injured by reason of the sawdust. p. 591.

3. NEGLIGENCE.—*Injuries to Children upon Premises of Another.*—*Liability of Owner.*—A landowner is not liable for injuries to a child coming upon his premises unless he owes to the child, or to the person prosecuting the action, a duty which he has neglected, the primary duty of protecting children devolving upon their parents, whose moral duty it is to keep their children from entering upon dangerous premises, an obligation equal at least to the moral obligation of the landowner to fence them out; and the mere fact that a child *non sui juris* is injured will not import negligence to the owner of the premises upon which the injury is sustained. p. 593.

4. RAILROADS.—*Trespassers and Licensees.*—*Duty of Railroad Companies.*—Generally, the only duty which a railway company owes to trespassers and licensees upon its right of way

Holstine v. Director, etc., Railroads—77 Ind. App. 582.

and tracks is not to willfully or wantonly injure them after discovering their presence. p. 596.

5. NEGLIGENCE.—*Infant Trespassers.—Attractive Nuisance and Last Clear Chance Doctrines.—Duty of Owner.*—Under the attractive nuisance and last clear chance doctrine a duty may arise from the fact of the presence of a child of immature years in a situation of peril coupled with knowledge, actual or constructive, of the owner of the premises on which the child is situated of the perilous situation of the child, and knowledge in such cases imposes on the owner the duty to exercise reasonable care in the use of his property so as not to injure the child. p. 598.

6. RAILROADS.—*Children on Tracks.—Duty of Railroad Company.*—A railway company owes no higher duty to an infant trespasser on its tracks than it does to an adult trespasser, even in the matter of the exercise of care to discover his presence on the track, and owes no duty to keep a lookout for his presence, in the absence of any knowledge thereof, but does owe to each of them the duty of ordinary care after it has actual or constructive knowledge of such presence, and ordinary care may require care of a different kind and degree where a child of tender years is involved. p. 598.

7. NEGLIGENCE.—*Invitation.—Permission or License.*—A mere permission or license to go upon the premises of another is not an invitation to do so. p. 598.

8. RAILROADS.—*Children on Tracks.—Duty of Railroad Company.—Ordinary Care.*—Where the person on the track is a child *non sui juris*, the railroad company, having knowledge, actual or constructive, of its presence and of its helplessness, must operate its cars with reference to the probable presence of such child and its helplessness, and use ordinary care to avoid injuring it, and in such case make use of the last clear chance, but reasonable care does not impose any duty where the presence of a child on its tracks is merely possible, or where such duty or care imposes on the company an unreasonable limitation on the usual and ordinary uses of its property. p. 599.

9. DEATH. — *Death of Child. — Contributory Negligence of Parents.—Right to Recover.*—The unattended presence of a child nineteen months old upon railroad tracks in the vicinity of a pile of sawdust, where it had been playing, *held*, if unexplained, to constitute such carelessness on the part of the parents as to prevent recovery by them for its death when struck by a train. p. 600.

10. DEATH.—*Wrongful Death.—Defenses.—Contributory Negligence.*—In an action by a parent for the death of a child

nineteen months old on a railroad track, as a matter of pleading the simple fact that a child of tender years was found in a place of danger was not presumptive evidence of any negligence on the part of the parents, since, if plaintiff did or failed to do something that a reasonably prudent person should or should not have done for the protection of the child, that was a matter of defense.   p. 601.

11. PLEADING.—Complaint.—Negligence.—Conclusions of Law.— In an action against a railroad company for the death on its tracks of a child nineteen months old, an allegation in the complaint that "it became and was the duty of" the railroad company "in operating its train at said point to keep a careful lookout so as to discover the presence of children of tender years who might wander or go upon its tracks and to avoid running its trains over them," was a conclusion of law rather than the allegation of a fact.   p. 602.

12. RAILROADS.—Injuries to Children on Tracks.—Duty of Railroad Company.—Keeping a Lookout.—A railroad engineer had the right, in the absence of any notice or knowledge to the contrary, to assume that the parents of immature children, playing around a pile of sawdust upon the right of way of a railroad company and near its tracks, were not permitting such children to go into a place of danger unattended, and if he had seen and knew that children of immature age were accustomed to gather and play around the pile of sawdust, he had the right to assume that their parents were not neglecting them and that some one of proper age was present to look after and care for them, and he was under no duty to the parents to keep a lookout for a child, or to slacken the train until after he became aware of the perilous situation of the child.   p. 604.

From Knox Circuit Court; Thomas B. Coulter, Judge.

Action by John E. Holstine against the Director General of Railroads.   From a judgment for defendant, the plaintiff appeals.   Affirmed.

Curtis G. Shake and Joseph W. Kimmell, for appellant.

W. R. Gardiner, C. K. Tharp, C. G. Gardiner and Woodson Tharp, for appellee.

MCMAHAN, J.—The questions presented by this appeal relate to the action of the court in sustaining a de-

murrer to appellant's complaint, which in substance alleges that on June 25, 1919, and for three months prior thereto there was a pile of sawdust along the edge of appellee's right of way, a part of which was on said right of way and part on the lands of other persons; that no fence guard or barrier was maintained between appellee's track and said pile of sawdust, which was about thirty feet from appellee's main line and which was in a clear and unobstructed view of the railroad a half mile to the east thereof; that from day to day for two months prior to said day numerous children of tender age had been and were accustomed to and did congregate, play and amuse themselves about said sawdust and upon and along appellee's right of way and tracks adjacent thereto; that said habit of said children was well known to appellee and its servants who operated trains over said tracks during all of said time; that by reason of said facts and said knowledge and because of the danger of such children being run over by appellee's trains it became and was the duty of appellee in operating its trains at said point to keep a careful lookout so as to discover the presence of children of tender years who might wander or go upon its tracks and to avoid running its trains over them; that on June 25, 1919, appellant's son, then nineteen months old, was playing on and about said pile of sawdust and while so engaged wandered upon appellee's track adjacent thereto, and while he was standing upon said track defendant ran one of its passenger trains over its said track at a speed of sixty miles an hour; that appellee's servants in charge of said train negligently failed to exercise ordinary care to see and discover the perilous situation of said child; that by the exercise of ordinary care the servants in charge of said train could have seen and appreciated the perilous situation of said child in time to have gotten said train under control and have

stopped the same before it reached said child but that said servants negligently failed to keep a lookout for said child or any children and negligently caused said train to run over and instantly kill it; that said child was *non sui juris* and did not know or appreciate the perilous position it was in; that the death of said child was the direct and proximate result of the negligence of appellee and its servants in charge of said train, in failing to keep a careful lookout for children on its track at that place and in failing to have said train under control, after appellee knew that the presence of children of immature judgment might be anticipated to be about said pile of sawdust and its right of way; that if appellee's employes in charge of said train had kept a careful lookout and had used ordinary care to see and discover the presence of children on its tracks, they could have stopped the train in time to have avoided running over said child.

Appellant first calls our attention to the objections to the complaint as set out in the memorandum filed with the demurrer and says that a party demurring to 1. a complaint waives all other objections and cannot avail himself on appeal of defects in the complaint not pointed out in the memorandum, and contends that in considering the sufficiency of the complaint we are limited to the objections pointed out in the memorandum.

If the demurrer had been overruled and the demurring party were attempting to reverse that ruling, the contention of appellant would be well taken. But when the demurrer has been sustained and on appeal the party demurring is attempting to uphold the action of the court a different rule prevails. *Bruns* v. *Cope* (1914), 182 Ind. 289, 105 N. E. 471.

Appellant says his complaint was drafted so as to bring it within the law as stated in *Cleveland, etc., R.*

*Co.* v. *Means* (1914), 59 Ind. App. 383, 104 N. E. 785, 108 N. E. 375, and frankly admits that if the Means case is not applicable to the facts pleaded, the judgment must be affirmed. In that case the accident occurred on a switch which had been constructed by and for years had been maintained by the railroad company as a part of its system and leading to a large flour mill. Cars loaded with grain were daily moved to and from the mill and in the transaction of such business cars were located on and required to remain standing on the switch awaiting their turn to be unloaded and then moved away in the regular course of business. This switch was near a public park in a populous part of the city of Indianapolis where great numbers of children constantly assembled to play and amuse themselves, and from which park numbers of them would stray and go to, about, on and under the cars standing on such switch, some in a spirit of adventure and others for the purpose of gathering grain that had leaked from the cars to the ground around and under the cars and on the track where the cars were standing. On the day of the accident ten of such cars were standing coupled together on the switch. This condition had existed for years, the only difference being in the number of cars standing on the switch. The wheat on the track and in the cars had for years attracted children from the park and the immediate vicinity. Such children played about the cars on the switch and collected the waste wheat from the empty cars and from the railroad ground and tracks. In gathering such wheat the children would be in, under, and between the cars, where a sudden movement of the cars would expose them to great danger. The railroad company knew said facts. Appellee's five-year-old son with a twelve-year-old brother had gone to the park to play, and with other boys was attracted and induced to leave the park and go upon the railroad

track by seeing other children playing about the cars and gathering wheat thereunder. While these boys were playing and gathering wheat from beneath the cars, and while appellee's five-year-old son was standing on the switch between two of the cars to which no engine was attached, the railroad company, knowing that children were likely to be then playing and gathering wheat at the place where the ten cars were standing on the switch, caused six other cars to be pushed by an engine onto and over the switch and against the cars standing on the switch, without making any effort to discover whether children were playing and gathering wheat under said cars or not, and without giving any notice or warning that such cars were going to be moved. The cars pushed into the switch, struck the cars standing on the switch, and caused them to be moved and thereby killed said five-year-old child while he was standing on the switch between two of the cars.

Appellant in the instant case contends that when a railroad company has actual or constructive knowledge that a child *non sui juris* may be expected to be on its tracks, it is the duty of such company to exercise ordinary care to avoid injuring such child, whether it be a trespasser or a licensee by invitation or permission, or whether the case comes within either the last clear chance or the attractive nuisance doctrine.

The court in the Means case, *supra,* in discussing the duty which a railroad company owes trespassers and licensees who might be upon its premises, said: "The duty of the owner of the premises toward a person injured thereon as affected by such respective relations between him and such owner, has been frequently recognized by the courts of this State and other jurisdictions to be, in general terms as follows: The owner or occupant of premises owes no duty to the trespasser thereon, except to refrain from wilfully or intentionally

injuring him after discovery of his presence.  *  *  *
'A licensee, who enters on premises by permission only,
without any enticement, allurement or inducement be-
ing held out to him by the owner or occupant  *  *  *
goes there at his own risk, and enjoys the license sub-
ject to its concomitant perils.'  *  *  *  To a licensee
on his premises, *by invitation*, the master or occupant
assumes an obligation of making and keeping such
premises in a reasonably safe condition, suitable for
the use of the licensee while he remains thereon, under
such invitation, and for a breach of this obligation he is
liable in damages to a person injured thereby, who is
himself free from contributory negligence.  *  *  *  In
this connection it is important to know what persons
are, in legal contemplation, licensees by permission only,
and what persons are licensees by inducement or invi-
tation express or implied.   On this subject the courts
of different jurisdictions have expressed themselves as
follows:   A licensee by permission is one who, for his
own convenience, curiosity or entertainment, goes upon
the premises of another by his (the owner or occu-
pant's) permission or sufferance.   Such a person takes
the premises as he finds them as to any defect therein,
and the owner is not liable for any injuries resulting
to him owing to defects in the conditions of the prem-
ises.   He is not liable for *passive* negligence.  *  *  *
Licensees of a railroad company have been defined to be
those persons who, being 'neither passengers, servants,
nor trespassers, and not standing in any contractual re-
lations to the railway, are permitted by the railway to
come upon its premises for their own interest, con-
venience or gratification.'  *  *  *  A licensee by in-
vitation is a person who goes upon the lands of another
with the express or implied invitation of the owner or
occupant, either to transact business with such owner,
or occupant, or to do some act which is of advantage to

him (the owner or occupant) or of mutual advantage to both the licensee and the owner or occupant of the premises. An invitation is implied from such a mutual interest. The distinction recognized by the authorities generally appears to be that a license by 'invitation is inferred where there is common interest or mutual advantage, while a license (by permission) is inferred when the object is the mere pleasure or benefit of the person using it.' * * * 'The law will not infer that the injured party was induced to enter, except the facts are sufficient to show an express or implied invitation. Mere acquiescence, or failure to object, is not sufficient to sustain such an inference.' "

The court, after reviewing the authorities and giving appellee the benefit of an interpretation of the evidence most favorable to her, expressed the opinion that her son was a licensee by permission, and disposed of the case by holding under the facts in the case that the railroad company owed the child the duty of exercising ordinary care before moving the cars standing on the switch; that since there was evidence tending to show that no signal or warning had been given before moving such cars, the question as to whether the railroad company was negligent was a question of fact for the jury, as was also the questions as to whether the mother was guilty of contributory negligence. The court, in discussing the doctrine of "attractive nuisances," expressed a serious doubt as to whether there was anything in the case that could be said to be so luring and inviting as to constitute an attractive nuisance and expressly stated that there was nothing there that could be construed as an invitation to the child to be on or around the cars on the switch.

Referring to the complaint in the instant case, there is nothing that can be construed into an invitation to appellant's child or to any other child to be upon appel-

lee's railway tracks. How the pile of sawdust
2. came to be there is not disclosed. We know noth-
ing about its size or how much of it was on the
right of way. It did not cause the injury. The child
was not injured by reason of the sawdust. The at-
tractive nuisance doctrine therefore is not applicable.
There was no invitation, express or implied, to appellant
to permit his child to be upon the railroad track of ap-
pellee. In the consideration of this case we must keep
in mind that it is not an action by the child to recover
damages for injuries inflicted upon it. It is an action
by the parent to recover damages sustained by him on
account of the death of the child.

The railroad company in the Means case, *supra,* in
effect conceded that the child there killed was a licensee
but contended that it owed him no active duty. In reply
to that contention the court held that such licensee must
take the premises as he finds them with all their risks
and dangers and that the owner owes him no duty of
making an active effort to discover his presence or his
particular surroundings while on the premises, and that
the owner, if he discovers the presence of such licensee
and sees him in a situation of peril, must not do an
affirmative act which may reasonably be expected to in-
crease the peril. But it also held that constructive
knowledge of the presence of a child licensee in position
of peril imposes at least as much care on the part of
the owner of the premises before he does an affirmative
act that might imperil the life or limb of such child as
would actual knowledge of the presence of a helpless
trespasser in a position of peril on such premises, im-
pose on the owner before doing an affirmative act to
increase the peril of such trespasser. "Reasonable
care," said the court at p. 407, "in such cases does not
impose any duty where the presence of a child on its
tracks is merely possible or where such duty or care im-

poses on the company an unreasonable limitation on the usual and ordinary use of its property. A correct and pertinent statement affecting this phase of the question will be found in *Chicago, etc., R. Co.* v. *Krayenbuhl* 65 Neb. 889, 902, 904, 91 N. W. 880, 881, 883, 59 L. R. A. 920, where it is said: * * * 'Ordinarily, it can be best carried forward by the unrestricted use of private property by the owner; therefore, the law favors such use to the fullest extent consistent with the main purpose for which, from a social standpoint, such business is carried forward, namely, the public good. Hence, in order to determine the extent to which such use may be enjoyed, its bearing on such main purpose must be taken into account, and a balance struck between its advantages and disadvantages. If, on the whole, such use defeats rather than promotes the main purpose, it should not be permitted; on the other hand, if the restrictions proposed would so operate, they should not be imposed. The business of life is better carried forward by the use of dangerous machinery; hence, the public good demands its use, although occasionally such use results in the loss of life or limb. It does so because the danger is insignificant, when weighed against the benefits resulting from the use of such machinery, and for the same reason demands its reasonable, most effective and unrestricted use, up to the point where the benefits resulting from such use no longer outweigh the danger to be anticipated from it. At that point the public good demands restrictions. * * * Hence, in all cases of this kind, in the determination of the question of negligence, regard must be had to the character and location of the premises, the purpose for which they are used, the probability of injury therefrom, the precautions necessary to prevent such injury, and the relations such precautions bear to the beneficial use of the premises.' "

"The business of life must go forward," said the court in *Loomis* v. *Terry* (1837), 17 Wend. 397, 31 Am. Dec. 306. The means, however, by which it is carried forward, cannot be rendered absolutely safe.

"It is impossible to carry on the common affairs of life without doing various things which are more or less likely to cause loss or inconvenience to others, or even which obviously tend that way; * * * To say that a man shall not seek profit in business at the expense of others is to say that he shall not do business at all, or that the whole constitution of society shall be altered. Like reasons apply to a man's use of his own land in the common way of husbandry, or otherwise for ordinary and lawful purposes." Pollock, Torts, (2d Eng. ed.) 133.

Restrictions upon the use of property diminishes *pro tanto* the beneficial character of the use, and hence the law imposes restrictions as seldom as possible,

3. and never except upon the strongest grounds. The law which is reluctant to impose restraint upon an owner's use of his land even when causing damage beyond his boundary, is more unwilling. to impose restraint upon a user which is dangerous only to those who intrude upon his land. The considerations that the beneficial use of land is a necessity and that such use cannot easily be restricted without very substantial damage or deprivation to the owner have great weight with courts in so far as the case of adults is concerned. In the great majority of the attempts to hold landowners liable for injuries to children, the children were not harmed by the owner setting force in motion or keeping it in motion, but they were harmed by coming in contact with objects which were at rest or with objects set in motion by the children or their companions. All cases of "attractive nuisance" and the turntable cases

are of this character. The fact that a child of tender years is innocent does not of itself establish the fault of the landowner. This is especially true when the action is being prosecuted by someone other than the child. The landowner cannot be liable unless he owes to the child, or to the one prosecuting the action, a duty which he has neglected. As was said in *Felton* v. *Aubrey* (1896), 74 Fed. 350, 20 C. C. A. 436, a case wherein Chief Justice Taft was one of the presiding judges, and in which the opinion was written by Judge Lurton, later Mr. Justice Lurton of the Supreme Court: "If there was no breach of duty, then there was no wrong, irrespective of the boy's capacity to know that what he was doing was dangerous."

The simple fact that a child *non sui juris* is injured will not import negligence to a defendant. It may be argued that a child of tender years is incapable of protecting itself and hence the law imposes that duty upon landowners. The primary duty of protecting children by nature and by law devolves upon their parents who have legal power to control their actions and whose moral duty it is to keep their children from entering upon dangerous premises—an obligation equal at least to the moral obligation of the landowner to fence them out. As said by Judge Jeremiah Smith in a well written article in 11 Harvard Law Review 349, 371:

"If the child, upon entering on the premises, is hurt by the 'active negligence' of the owner in bringing force to bear upon him, it may well be that the negligence of the parent in failing to restrain the child's entrance does not bar the child's recovery for the force thus brought to bear upon him after his entrance. * * * When a child wakes up in the morning in his father's house, the duty of providing a safe playground for him during the day rests upon his parents. Is this duty shifted from the parent to private landowners because the child

chances to escape from the parent's care?    If those who brought the child into the world are unable, by reason of poverty, to provide him a playground, this may afford an argument for the passage of a statute imposing that duty upon the municipality, in which case each landowner would have to contribute his proportion of the expense.    But this is quite another thing from assessing upon a single unfortunate landowner the entire damage arising from the want of such a playground."

"The average boy," says the court in *Twist* v. *Winona, etc., R. Co.* (1888), 39 Minn. 164, 39 N. W. 402, 12 Am. St. 626, "can make a plaything out of almost anything and then so use it as to expose himself to danger."

And as was suggested in *Dobbins* v. *Missouri, etc., R. Co.* (1897), 91 Tex. 60, 41 S. W. 62, 38 L. R. A. 573, 66 Am. St. 856, under this test almost anything is attractive and dangerous which a jury may think fit to call so. If a railroad company in a case like the present be held under a duty, such duty is not likely to be set lower than a duty to use such an amount of care, to use such precautions as will render it improbable that harm will result to children found upon its right of way.    Such a rule would in many cases require precautions which could only be carried out safely at an expense or in a manner practically prohibitive of beneficial user.  · As said by Lord Justice MacDonald in *Ross* v. *Keith* (1888), 16 Scotch Session Cas. 4th Series 86:    "To hold that every piece of ground which contains some place or something that might be dangerous to children must be so fenced that children can enter only by what is practically a mode of siege would be to lay an intolerable burden on proprietors."    Any less efficacious method would probably not be regarded as affording reasonable probability that no child catastrophe would occur.    Such a rule in the majority of cases would probably mean that the owner of the land must make his ground prac-

tically impregnable to children, that is, child proof. This in many instances would compel the cessation of profitable user. Where the existence of a duty is once admitted, the danger that the jury will be too swift to favor the breach of it does not afford a sufficient reason for abrogating the duty. But when the question is whether a duty shall be held to exist, whether in a particular case the law ought to impose a duty, when the case is on the border line, and when strong reason can be given against establishing the duty, then the probability that the rule contended for would often be misapplied may well be given great and even decisive weight in influencing courts against the establishment of the alleged duty. *Mitchell* v. *Rochester R. Co.* (1896), 151 N. Y. 107, 45 N. E. 354, 34 L. R. A. 781, 56 Am. St. 604; *Spade.* v. *Lynn, etc., R. Co.* (1897), 168 Mass. 285, 47 N. E. 88, 36 L. R. A. 512, 60 Am. St. 393.

Appellee's main contention is that the child was a trespasser and that it was under no duty to keep a lookout for it and even if it had used the utmost care in keeping a lookout it could not have discovered the child on the track and stopped the train in time to have prevented its injury and death. Speaking generally, it is no doubt true, as appellee in effect contends, that the only duty which a railway company owes to trespassers and licensees upon its right of way and tracks is not to wilfully or wantonly injure them after discovering their presence. *Cannon* v. *Cleveland, etc., R. Co.* (1901), 157 Ind. 682, 62 N. E. 8; *Cleveland, etc., R. Co.* v. *Means, supra.* This rule, however, like others, has its exceptions. As said by the court in the Means case, *supra*, at page 395: "Probably no question of law presents a greater diversity of opinion, and expression thereof, among the courts of different jurisdictions than the question whether a railroad company owes to the trespasser on its tracks, whether adult or a child *non*

sui juris, any duty of care or vigilance to discover such presence." The court, after calling attention to the fact that there is one line of authorities holding that a railroad company owes even to adult trespassers the duty of some care and vigilance to discover his presence on the tracks, and that there is another line of authorities holding in effect that no duty rests upon such a company to keep a lookout for trespassers whether young or old, states that there is what in some jurisdictions has been termed an intermediate rule and which is stated in *Palmer* v. *Oregon Short Line R. Co.* (1908), 34 Utah 466, 98 Pac. 689, 16 Ann. Cas. 229, as follows: Where a railroad company "has permitted the public the free use of the tracks to pass along or over, and this use is open and continued for a long period of time and by a large or considerable number of people, or where the railroad runs through thickly populated portions of a city, town, or village where people frequently go upon or pass over the tracks for such a length of time that the employes of the railroad company may be charged with notice, or when such notice is directly given them, then in all such cases, although the injured person be a trespasser, still the railroad company, having reason to expect that someone may be on or near the track, must act accordingly, and keep a lookout and give timely warning in order to prevent a collision, and a failure to exercise ordinary care in keeping a lookout and in giving warning may be negligence for which even a trespasser is entitled to recover, provided he is not guilty of contributory negligence which is the proximate cause of the injury. In cases of adults being at such place, the employes of a railroad company are not required to either check the speed of the train or to stop it as soon as they discover the intruder. All that is required of them in the first instance is to give timely warning of the approach of the train. On giving such

warning they have the right to assume that the intruder will leave the track. In the case of children or infants, however, they may not indulge such a presumption, but must at once arrest the speed of the train as soon as they discover the children, or, by the exercise of ordinary care, ought to have discovered them, on the track or in a place of danger. This also applies to helpless adults who may be on the track or in a place of danger, when their helplessness is discovered, or, by the exercise of ordinary care, ought to be discovered."

The attractive nuisance doctrine and the doctrine of the last clear chance when reduced to their final analysis will be found to arise out of the emergency and necessity presented by the facts in each particular case and as was said in the Means case, supra, originate "in an inherent sense of justice and humanity present in every civilized and enlightened people which places so high a regard on life and limb that it will not permit their possessor, when helpless and in a situation of peril, to be deprived of the one or injured in the other by an affirmative act of negligence of another in the use of his property when such person has knowledge, actual or constructive of the helpless and perilous situation of the former."

A duty in such cases may arise from the fact of the presence of a child of immature years in a situation of peril coupled with knowledge, actual or constructive, of the owner of the premises on which the child is situated of the perilous situation of such child. Knowledge in such cases imposes on such owner the duty to exercise reasonable care in the use of his property so as not to injure another.

As we view this case, it being an action by the parent, it is not necessary to determine whether appellant's child was a trespasser or whether he was a licensee by permission or by invitation. He

was on appellee's railroad track and appellee, as alleged in the complaint, had reason to know or to anticipate that he or some other child of tender years would be on its tracks at the time of the fatal injury. But appellee's servants, as we shall hereafter show, were not required to anticipate that parents were going to permit a nineteen-months old child to go into a place of danger unattended. Some cases indicate that a railway company owes a higher duty to an infant trespasser on its tracks than it does to an adult trespasser, even in the matter of the exercise of care to discover his presence on the track, but this state is committed to the rule that as to the duty of discovery, when it has no knowledge, actual or constructive, of such presence or probable presence, the duty of the railroad is the same as to both; viz., such company owes no duty to either to keep a lookout for his presence, but it owes each of them the duty of ordinary care after it has actual or constructive knowledge of such presence, and ordinary care may require care of a different kind and degree where a child of tender years is involved. *Indianapolis, etc., R. Co.* v. *Pitzer* (1887), 109 Ind. 179, 6 N. E. 310, 10 N. E. 70, 58 Am. Rep. 387; *Cleveland, etc., R. Co.* v. *Means, supra.* A mere permission or license is not an invitation. *Wright* v. *Boston, etc., R. Co.* (1886), 142 Mass. 296, 7 N. E. 866.

In a case where the person on the track is a child *non sui juris*, the railroad company having knowledge, actual or constructive, of its presence and of its helplessness, must operate its cars on its tracks with reference to the probable presence of such child and its helplessness and use ordinary care to avoid injuring it, and in such a case make use of the last clear chance. By adopting the middle ground as this court did in the Means case, *supra*, it does not follow that a railroad company is an insurer of the safety of children

who come on its premises, either as licensees or tres-
passers, or that it at all times and places owes them any
duty of care. Reasonable care, however, does not im-
pose any duty where the presence of a child on its tracks
is merely possible or where such duty or care imposes
on the company an unreasonable limitation on the usual
and ordinary uses of its property.

The law favors the unrestricted use of railroad prop-
erty and the operation of the trains thereon to the full-
est extent consistent with the purpose for which the
business of railroads is carried on, namely, the public
good. If restricted use of such property would defeat
that purpose such restriction should not be permitted.

The facts as they are alleged in this case are not to
be compared with the facts in the Means case, *supra,*
where the employes of the railroad were engaged in
placing freight cars on a switch and not in the opera-
tion of a regular passenger train over the main line of
the road, a train which was required to maintain a high
speed in order to make its scheduled running time.

"The maxim that a man must use his property so as
not to incommode his neighbor, only applies to neighbors
who do not interfere with it or enter upon it." *Frost*
v. *Eastern Railroad* (1886), 64 N. H. 220, 9 Atl. 790,
10 Am. St. 396.

The complaint does not allege the direction from
which the train approached, or that appellee's servants
saw the child in time to have stopped the train.

9. No attempt is made to bring the case within the
doctrine of the last clear chance. How long the
child had been at the pile of sawdust, how long he had
been on the track, how long he had been absent from
his home, whether he was attended or unattended by
some older person, does not appear. The unattended
presence of this child upon the railroad tracks under the
conditions disclosed would, if unexplained, constitute

such carelessness on the part of its parents as to prevent recovery by them.

In cases like the present a balance must be struck between the benefit to the public by permitting a landowner the unfettered beneficial use of his property and the harm that may be done in particular instances by the use of that freedom. As said by Judge Smith in the article heretofore referred to, 11 Harvard Law Review 349, 360: "The true ground for the decision is policy; i. e., expedience, in the Benthamic sense of the greatest good to the greatest number; and the advantages to the community, on one side and the other, are the only matters really entitled to be weighed." See also, Mr. Justice Holmes, 8 Harvard Law Review 469.

Appellee contends that the fact that the parent of a child nineteen months old permitted such child to wander away from its home and to a place so dangerous as described in the complaint without some excuse being given shows such negligence on the part of the parent as to prevent a recovery. We cannot agree with this contention. As a matter of pleading, the simple fact that a child of tender years is found in a place of danger is not presumptive evidence of any negligence on the part of its parents. In the instant case, negligence on the part of the defendant and contributory negligence on the part of the plaintiff are matters of pleading. It may be that appellant had exercised reasonable care to guard his child from danger, that such child might have been in charge. of an adult person, and without any negligence on the part of such attendant have wandered upon the railroad track where it met its death. If appellant did or failed to do something that a reasonably prudent person should or should not have done for the protection of his child, that was a matter of defense. In determining whether appellant was guilty of contributory negligence we cannot

presume that he was. All we need do is to hold that there are no allegations in the complaint from which it can be said as a matter of law that appellant was guilty of any negligence proximately contributing to the death of his child. *Grand Trunk, etc., R. Co.* v. *Reynolds* (1910), 175 Ind. 161, 92 N. E. 733, 93 N. E. 850. This, however, is not equivalent to saying that appellee was, under the allegations of the complaint, guilty of any actionable negligence. The allegation in the complaint that "it became and was the duty of appellee in operating its train at said point to keep a careful lookout so as to discover the presence of children of tender years who might wander or go upon its tracks and to avoid running its trains over them," is in our opinion a conclusion of law rather than the allegation of a fact. *Chicago, etc., R. Co.* v. *Lain* (1908), 170 Ind. 84, 83 N. E. 632.

It has been many times held that a plaintiff may, without being guilty of negligence, act upon the assumption that the defendant is not going to be negligent in the performance of any duty.

In *Nichols* v. *Chicago, etc., R. Co.* (1908), 44 Colo. 501, 98 Pac. 808, the court said: "Ordinarily, an engineer may presume that one approaching a public crossing over which a train is about to pass is aware of the approaching train, or will not place himself in imminent peril, * * * Ordinary care on the part of an engineer requires vigilance to guard against a dangerous situation reasonably to be apprehended as well as one actually imminent."

And in *Morton* v. *Southern R. Co.* (1911), 112 Va. 398, 71 S. E. 561, the court said: "This court has also repeatedly sanctioned also the rule, * * * that trainmen have a right to assume that a traveler will, in the discharge of his duty, take reasonable precautions for his own safety; that he will look and listen before

undertaking to cross a railroad track; and that it is only after it comes to the knowledge of the trainmen (or when, by the exercise of ordinary diligence upon their part, it should come to their knowledge) that the traveler, disregarding his duty, has placed himself in peril of which he was unconscious, that any duty devolves upon the trainmen to undertake to stop the train."

And in *Bonner* v. *Grand Trunk, etc., R. Co.* (1916), 191 Mich. 313, 158 N. W. 3, the court announced the same doctrine. See also, *Norfolk, etc., R. Co.* v. *Sink* (1916), 118 Va. 439, 87 S. E. 740; *Chesapeake, etc., R. Co.* v. *Hunter's Admr.* (1916), 170 Ky. 4, 185 S. W. 140. The same rule has been applied in cases involving children. *Norfolk, etc., R. Co.* v. *Overton* (1911), 111 Va. 716, 69 S. E. 1060 (a 13-year-old boy); *St. Louis, etc., R. Co.* v. *Gibson* (1915), 48 Okla. 553, 150 Pac. 465 (a 13-year-old boy); and in *Illinois Cent. R. Co.* v. *Dupree* (1910), 138 Ky. 459, 128 S. W. 334, 34 L. R. A. (N. S.) 645 (a 5-year-old girl), where it was held, "That in view of the right of the engineer to assume that no one, even a child, would deliberately run ahead of an approaching train under the circumstances, he was not negligent for failing to anticipate that possibility."

See also, *Mollica* v. *Michigan Central R. Co.* (1912), 170 Mich. 96, 135 N. W. 927, L. R. A. 1917F 118 (a 9½-year-old boy); and *Southern R. Co.* v. *Daves* (1908), 108 Va. 378, 61 S. E. 748 (an 8-year-old boy). "The railroad company," said the court in the case last cited, "cannot be held liable for the failure of its engineer to anticipate that a person, whether infant or adult, approaching a crossing, is going to step upon the track immediately in front of a moving engine, unless there is something to suggest to the engineer that such person does not intend to remain in a place of safety until the train has passed. If it were the duty of a railroad com-

pany to stop its trains whenever it saw children running in the direction of a public crossing, the public service would be reduced to a wholly inadequate degree of efficiency."

And this court in *Indianapolis St. R. Co.* v. *O'Donnell* (1905), 35 Ind. App. 312, 73 N. E. 163, 74 N. E. 253, in holding that a plaintiff is not bound to anticipate a defendant's negligence, said: "In determining the quality of the action taken by an individual in a certain juncture, his environment must be considered, and it is to be observed that the traveler is not required to anticipate negligence on the part of those in charge of an approaching car, but, on the contrary, he has the right to presume that reasonable care will be exercised by them."

Applying this doctrine to the instant case we hold that appellee's servants had the right, in the absence of any notice or knowledge to the contrary, to assume that the parents of immature children playing around and upon the pile of sawdust were not permitting such children to go into a place of danger unattended, and that if, as a matter of fact, they had seen and knew that children of immature age were accustomed to gather and play around the pile of sawdust, they had the right to assume that their parents were not neglecting them and that some one of proper age was present to look after and care for them. There being nothing in the complaint to the effect that appellant's child was not properly attended by his parents or someone acting for them and that appellee's servants in charge of the train had knowledge of such fact, they were under no duty to such parents to keep a lookout. for said child or to slacken their train until after they became aware of the perilous situation of the child.

It is to be observed that while the complaint alleges that children of tender years had been accustomed to

congregate and play upon and about the pile of sawdust and upon and along appellant's right of way and tracks, and that appellee had knowledge of such facts, there is no allegation that the children when so playing were not at all times in charge of and attended by some person of mature years who would, in the exercise of ordinary care, keep such children off of the railroad track when trains would be passing. It is negligence for a parent to permit an unattended child of immature years to be upon a railroad track where trains are frequently passing. It is not to be presumed that a parent will permit his child of tender years, immature judgment, and bodily helplessness to go into a place of danger unattended. This being true, in the absence of an allegation that the children of tender years who had been in the habit of congregating and playing at and around the pile of sawdust were unattended, and that appellee and its servants knew such fact, appellee had the right to assume that parents would not be negligent and would not permit them so to congregate unless they were attended by some person who would see that they did not wander on the railroad track in time of danger. Appellee, from the facts alleged in the complaint, was not required to anticipate that appellant would permit his nineteen-months old child to play around this pile of sawdust and upon the railroad right of way unattended. It was not bound to anticipate appellant's contributory negligence and to operate its trains accordingly. The complaint does not allege such a state of facts as to show that appellant was, as a matter of law, guilty of contributory negligence. Neither is there anything in the complaint to show any actionable negligence on the part of appellee. We hold that appellee's servants had the right to assume that the children playing around and on the pile of sawdust were being guarded and protected by their parents. The fact that appellee knew that children of immature

years, who were attended by some person of mature years, were in the habit of playing at the pile of sawdust, is not, under the allegations of the complaint in this case, sufficient to create a duty on the part of appellee. Appellant's complaint is not founded upon the doctrine of last clear chance nor upon the doctrine of willfulness. It is founded upon the alleged negligence of appellee in failing to keep a lookout and discover the presence of the child on the track in time to stop the train and prevent the injury. In our judgment the demurrer was properly sustained.

The judgment is therefore affirmed.