NEAL, ADMINISTRATOR, ETC. *v.* HOME
BUILDERS, INC. ET AL.

[No. 29,027.   Filed March 23, 1953.   Rehearing
denied April 22, 1953.]

*Owen W. Crumpacker, Crumpacker & Friedrich,* all of Hammond, for appellant.

*Fansler, Fauvre, Young & Chambers,* all of Indianapolis, *Amicus Curiae.*

*Glenn D. Peters, G. Edward McHie,* and *Peters & Highland* (of counsel), all of Hammond, for appellee.

BOBBITT, J.—This action was commenced by the filing of a complaint in one paragraph by the administrator of the estate of Shirley E. Neal, deceased, to recover damages resulting from her death caused by the alleged negligence of appellees.

The complaint was amended and a demurrer thereto was sustained for want of facts sufficient to state a cause of action. Plaintiff (appellant) refused to plead over and judgment was rendered against him, from which he appealed. The sustaining of the demurrer is the sole error assigned.

The relevant parts of the amended complaint are as follows:

"(5)   On June 10th, 1946 the defendants were engaged in the construction of a story and a half frame dwelling house located on Ontario Street near the intersection of said street with 173rd Street in the City of Hammond. Said dwelling house was being erected on the east side of Ontario Street and was the second dwelling house located on the east side of Ontario Street, north of 173rd Street. On June 10th, 1946 said dwelling house was in a partial stage of completion in that the foundation has been completed, the side walls erected and the roof placed upon the building. The doors and windows had not yet been installed. No flooring had been placed upon the joists or rafters constructed at or about the so-called street level, nor had any flooring been placed upon the rafters and joists which constituted the supporting structure or the so-called upstairs or second floor of the frame building. On the north side of the building and approximately at street level there was an opening in the structure approximately 36" wide and 90" in height, which opening was apparently constructed for the purpose of installing a door or entry way to the structure. On June 10th, 1946

no barricades or other obstructions were placed in the opening for the purpose of prohibiting the entry into the structure by children or other persons in the immediate locality. On the inside of the structure and within a few feet of the opening herein mentioned the defendants or either of them acting through their agents and or employees had caused to be placed a wooden stepladder, the lower portions of which rested on the joists or rafters at ground level and the upper extremeties rested upon or reached the joists or rafters which were erected or constructed for the flooring of the so-called second floor.

"(6) The conditions above described which existed on June 10th, 1946 had existed for several days prior thereto. On June 10th and for several days prior thereto, various children in the neighborhood, including the children of the decedent mentioned above, were accustomed to playing in and about the dwelling house and surrounding neighborhood. These children had been accustomed to making entry into the building through the opening described and had been playing in and about the stepladder and joists herein mentioned. By virtue of the fact that the frame building was in the early stages of completion, and by virtue of the further fact that no steps had been taken to prevent small and immature children from gaining entrace into the structure, the dwelling house had become on June 10th and for several days prior thereto a peculiarly attractive location for immature children in the neighborhood to sport and play. This condition was and had been fully known to the defendants and each of them in that it was apparent to the carpenters and other tradesmen working as employees of the defendants in and about the premises. Plaintiff believes and states the fact to be that the conditions described herein were personally known by the defendant Francis L. Wilson who was in the habit of making daily inspection of the dwelling house under construction, in connection with his supervisory duties.

"(7) On or about Monday, June 10th at approximately 9· o'clock in the morning the three children of the defendant entered the dwelling

house through the opening on the north side of the structure for the purpose of sport and play as was their habit. Anthony and Clarence climbed the stepladder to the upper joists and rafters. John, the youngest, became caught, pinioned upon the stepladder as he attempted to follow his older brothers up the stepladder to the so-called second story. Being unable to extricate himself and becoming frightened he uttered several screams. The screams of the child were heard by the decedent while she was engaged in her household duties in her home directly across the street from the dwelling house being constructed. Recognizing the voice of her youngest son and realizing that the child was in peril, the decedent left her home, ran across the street and entered the structure. In attempting to extricate the child from his position of peril on the stepladder and being under emotional stress because of the peril of the child, the plaintiff's decedent lost her footing upon the joists and fell astraddle one of them causing severe bodily injury to plaintiff's decedent from which she died on June 27th, 1946. At the time of her injury plaintiff's decedent was seven months pregnant with child.

"(8) The sole and proximate cause of the death of plaintiff's decedent was the negligence of the defendants and or each of them acting through their agents and employees, in the following particulars:

"(a) In failing to use reasonable care in barricading the entrance of the semi-completed dwelling house as herein described, when they knew, or in the exercise of reasonable care should have known, that children of immature years and more particularly the children of plaintiff's decedent were attacted to the semi-completed dwelling house for the purpose of play and sport, and were at the time and place of injury to plaintiff's decedent accustomed to using the semi-completed dwelling house as a place of sport and play.

"(9) Prior to her injury and death, as hereinabove mentioned, the plaintiff's decedent was a well and healthy woman twenty-nine years of age. Plaintiff and the children of plaintiff and the de-

cedent were dependent upon the decedent for the performance of all the household duties required in maintaining the family and in nursing and raising the children. As a result of said negligence plaintiff and the remaining heirs at law of said Shirley E. Neal suffered great damage in that they were deprived of the care, services and attention of said Shirley E. Neal. Plaintiff also suffered further damage in that he was required to expend moneys for the expenses of the last illness of the decedent and for her burial. The damage so suffered was and is greatly in excess of Ten Thousand ($10,000.00) Dollars."

If appellant is to recover under the allegations of his complaint, it must be done under the "rescue doctrine." This rule is clearly stated in 65 C. J. S., Negligence, §63, p. 554:

"One who has, through his negligence, endangered the safety of another may be held liable for injuries sustained by a third person in attempting to save such other from injury."

It has been applied in the jurisdictions which have adopted it only where the situation which invites rescue is created by the tortious act of the defendant or by one for whom he is responsible. 65 C. J. S., Negligence, §124, p. 738.

The sole act of negligence here charged is: The failure of appellees under the circumstances as set out in the amended complaint to "barricade the entrance to the semi-completed dwelling house" described in said complaint.

Actionable negligence consists of (1) the existence of a duty on the part of the defendant to protect the

plaintiff from injury; (2) a failure by the defendant to perform that duty; and (3) an injury to the plaintiff from such failure of the defendant. *Harris* v. *Indiana General Service Co.* (1934), 206 Ind. 351, 356, 189 N. E. 410; *Pontiac-Chicago M. E. Co.* v. *Cassons & Son* (1941), 109 Ind. App. 248, 254, 34 N. E. 2d 171.

The absence of any one of these elements renders a complaint bad for insufficient facts. *Elder, Receiver* v. *Rutledge, Admx.* (1940), 217 Ind. 459, 464, 27 N. E. 2d 358; *Pontiac-Chicago M. E. Co.* v. *Cassons & Son, supra.*

The second and third elements of actionable negligence are not in dispute, hence the sole question is: Did the appellees owe a legal duty to the children of the deceased, Shirley E. Neal, to put something across the doorway opening in the semi-completed building to keep them out—off the premises?

Appellant contends that greater care is required in dealing with children of tender years than with older persons who have reached the age of discretion and relies upon *Penso, by next Friend* v. *McCormick et al.* (1890), 125 Ind. 116, 25 N. E. 156, 9 L. R. A. 313, 21 Am. St. Rep. 211, and *Drew* v. *Lett* (1932), 95 Ind. App. 89, 182 N. E. 547, for support.

In this state the only degree of care required is always the care which an ordinarily prudent person would exercise under the same or similar circumstances. *Jones* v. *Cary* (1941), 219 Ind. 268, 279, 37 N. E. 2d 944; *Fields* v. *Hahn* (1945), 115 Ind. App. 365, 375, 57 N. E. 2d 955.

The rule which this court recognizes as the law in Indiana is ably stated in *Thompson* v. *Ashba* (1951), 122 Ind. App. 58, 61, 102 N. E. 2d 519, 521, as follows:

"There are no degrees of negligence in the State

of Indiana, neither are there degrees of care. The law upon this subject has been stated as follows:

" 'If there can be no degrees of negligence, it must follow that there can be no degrees of duty. Duty is an absolute term. The law requires nothing more than duty; it will excuse nothing less.

" 'The use of such terms as "slight care," "great care," "highest degree of care," or other like expressions . . . indicating the quantum of care the law exacts under special conditions and circumstances, is misleading; and when so used they constitute an invasion of the province of the jury, whose function it is to determine what amount of care is required to measure up to the duty imposed by law under the facts of the particular case. The law imposes but one duty in such cases, and that is the duty to use due care'. Union Traction Co. v. Berry, 1919, 188 Ind. 514, 121 N. E. 655, [657], 124 N. E. 737, [32 A. L. R. 1171].

" 'The care required varies with each case, with each set of facts; . . . . Jones et al. v. Cary, 1941, 219 Ind. 268, 37 N. E. 2d 944; Union Traction Co. of Indiana v. Berry, supra; Elder v. Rutledge, 1940, 217 Ind. 459, 27 N. E. 2d 358."

See also: *Heiny, Admx.* v. *Pennsylvania R. Co.* (1943), 221 Ind. 367, 373, 47 N. E. 2d 145; *Jones* v. *Cary* (1941), 219 Ind. 268, 279, 280, 37 N. E. 2d 944, *supra; Lake Erie, etc. R. Co.* v. *Ford* (1906), 167 Ind. 205, 212, 78 N. E. 969; *Indiana Service Corp.* v. *Schaefer* (1936), 101 Ind. App. 294, 298, 199 N. E. 158.

The duty to exercise care for the safety of another arises as a matter of law out of some relation existing between the parties, and it is the province of the court to determine whether such a relation gives rise to such duty. *Union Traction Co.* v. *Berry, Admr.* (1919), 188 Ind. 514, 520, 121 N. E. 655, 124 N. E. 737, 32 A. L. R. 1171.

*First:* In determining whether appellees were guilty of actionable negligence, we shall first consider whether

the facts here alleged bring the case within the common law rule.

The general common law rule applicable here is stated in 65 C. J. S., Negligence, §27, pp. 450, 451, and supported by the authorities there cited, as follows:

"The general rule is that no different or higher duty exists with respect to an infant trespasser than would exist in the case of an adult trespasser, so that ordinarily there is no duty toward an infant trespasser except to refrain from willful or wanton injury. Accordingly, it has been held that ordinarily there is no duty to anticipate the presence of infant trespassers, to keep a lookout for them, to guard against their intrusion, or to keep property in such safe, proper, or particular condition as not to endanger them if they trespass thereon. Infant trespassers ordinarily take the premises as they find them."

The children here involved are either trespassers or licensees by sufferance or permission and the above rule applies with equal force to all. It seems clear to us that the complaint herein does not state facts sufficient to constitute a legal duty within the general common law rule above stated.

*Second:* Next we shall consider whether the facts herein alleged bring appellant's case within the clearly defined limits of the attractive nuisance doctrine which is an exception to the common law rule.

The rule under which the doctrine of attractive nuisance operates is stated in 38 Am. Jur., §151, p. 818, as follows:

". . . The doctrine of attractive nuisance, it has been said, is limited in its application to cases where the danger is latent, and affords no basis for a recovery where the injury complained of was produced by a peril of an obvious or patent character. A danger which is not only obvious but natu-

ral, considering the instrumentality ·from which it arises, is not within the meaning of the attractive nuisance doctrine, for the reason that an owner or occupant is entitled to assume that the parents or guardians of a child will have warned him to avoid such a peril. Pits and excavations on land embody no dangers that are not readily apparent to everyone, even very young children. For this reason, the proprietor is under no obligation, as a rule, to fence or otherwise guard such places, and he will not be liable for injuries to children who may have fallen therein. . . ."

And, further, in 65 C. J. S., Negligence, §29 (3), p. 461, as follows:

"It has been considered that the attractive nuisance doctrine applies only where the danger is latent, and not when it is patent, for the reason that the inefficiency of children who are so little advanced as to be unable to recognize patent dangers should not be allowed to shift the care of them from their parents to strangers or to impose on the owners of property a duty and liability where otherwise none would exist."

Appellant concedes that the facts in this case do not bring it within the "attractive nuisance" doctrine and in this we concur.

While the semi-completed dwelling house might have been attractive to children of the deceased herein as a place to play, there is no allegation that a latent or unsuspected danger, which was negligently created or maintained by the appellees, or either of them, was present in the building. In the absence of such an allegation the complaint would not be sufficient if the attractive nuisance doctrine were the sole reliance for recovery.

A building under construction ordinarily does not come within the attractive nuisance rule. *Puchta* v.

*Rothman* (1950), 99 Cal. App. 2d 285, 221 P. 2d 744; *State* v. *Bealmear* (1925), 149 Md. 10, 130 A. 66; *Witte* v. *Stifel* (1895), 126 Mo. 295, 28 S. W. 891, 47 Am. St. Rep. 668; 65 C. J. S., Negligence, §29, (12i), p. 475.

*Third:* Having concluded that the facts herein do not bring appellant's case within the attractive nuisance rule, it then follows that if appellant's complaint is sufficient it must rest upon some variation of the attractive nuisance rule or upon some other exception to the common law rule.

The attractive nuisance rule has been extended in some jurisdictions under certain limited conditions where children of tender years are known trespassers. The rule which is generally applied under such circumstances as stated in 65 C. J. S., Negligence, §28, p. 453, 454, involves four particular conditions: (1) Where there is "knowledge of the presence of an infant trespasser in a position of peril;" (2) "where one who is in charge of dangerous machinery sees a child of tender years intruding into a place where it may be endangered by such machinery;" (3) where "one who maintains something dangerous to children and so exposed that there is a likelihood of their coming in contact with, and being injured by . . . it . . . notwithstanding they may be trespassers;" and (4) "when the owner knows or should know that children are likely to trespass on a part of his land on which he maintains a condition which is likely to be dangerous to them . . ."

The first part of the rule noted above applies only to situations where children are already on the premises, and with the knowledge that they were in a position of peril the owner failed to take the necessary precaution to avoid injury to them. The duty here charged is the failure to barricade the

entrance—to keep the children out of the semi-constructed house—not to avoid injury to them after they had entered. Hence, appellant does not bring his case within this section of the above rule.

There is no allegation in the complaint that appellees were in charge of dangerous machinery of any kind, hence the second section of the rule has no application here.

The complaint contains no allegation that appellees maintained something dangerous to the child with which it came in contact and was injured thereby. Hence, appellant's case cannot rest upon the third section of the rule.

It is alleged in the complaint that appellees knew that children were accustomed to play in the semi-constructed house in question. The only requirement necessary then to bring the case at bar within §4 of the rule is, that the complaint allege facts sufficient to show that appellees or one of them maintained a condition within the semi-completed house that would likely be dangerous to children. In all of the cases cited as the basis for this section of the rule there was present some artificial or unnatural condition which was inherently dangerous and involved an unreasonable risk to children; and where the court held there was a liability it arose only out of the negligent act of the landowner in maintaining such condition in a dangerous manner.

See: *Angelier* v. *Red Star Yeast & Products Co.* (1934), 215 Wis. 47, 254 N. W. 351; *McPheters* v. *Loomis* (1939), 125 Conn. 526, 7 A. 2d 437; *Wolfe* v. *Rehbein* (1937), 123 Conn. 110, 193 A. 608.

The only condition which the complaint alleges as being maintained upon the premises here under consideration and which for the purposes of the demurrer

must be considered as the "artificial or unnatural condition" if any, which constituted an "unreasonable risk" to appellant's children was a wooden stepladder "on the inside of the building and within a few feet of the opening" described in the complaint, and which extended from the joists on the ground floor to the second floor, or "upstairs."

It cannot be said that a stepladder, extending from the first to the second floor of a dwelling house under construction, for the use of the carpenters in the course of their work is an "artificial condition" which is "inherently dangerous" to children. That it is a natural and usual practice to use ladders of one type or another, as a means for carpenters and other workers to go from one floor to another in the performance of their duties in connection with the building of a dwelling house, is common knowledge. While there is always some danger involved when a small child climbs a ladder or a fence, a tree, or an open stairway, yet it cannot be said that either is *inherently* dangerous or that either is a "dangerous instrumentality," *per se.*

"Inherently dangerous" means that danger is contained in and is an inherent part of the constitution of the instrumentality or condition itself, at all times, in such a manner as to require special precautions to prevent injury, not simply danger arising from mere casual or collateral negligence of others. *Brown* v. *City of Craig* (1943), 350 Mo. 836, 168 S. W. 2d 1080, 1082; *Emery* v. *Thompson* (1941), 347 Mo. 494, 148 S. W. 2d 479, 480; *Fackrell* v. *City of San Diego* (1945), 26 Cal. 2d 196, 157 P. 2d 625, 629, 158 A. L. R. 773; *Vale* v. *Bonnett* (1951), 89 U. S. App. D. C. 116, 191 F. 2d 334, 339.

We do not naturally expect that danger will result

from climbing a stepladder or from entering a dwelling house under construction unless it is produced by some negligent act independent of the ladder or construction itself; and where danger is not naturally expected to result in the use of something it is not an "inherently dangerous instrumentality." *Jennings* v. *Vincent's Admx.* (1940), 284 Ky. 614, 145 S. W. 2d 537, 541.

It has been held that "wooden horses" and mortar boards are simple appliances in common use by carpenters and others, and are not inherently dangerous instrumentalities within the attractive nuisance doctrine. *Ray* v. *Hutchison* (1933), 17 Tenn. App. 477, 68 S. W. 2d 948, 954.

A stationary barn ladder which came apart causing injury to an employee was held not to be a "dangerous instrumentality" in *McVey* v. *Gerrald* (1937), 172 Md. 595, 192 A. 789, 793.

We do not believe that either a stepladder or a dwelling house under construction is such a "condition" as is likely to be dangerous to children within the meaning of §4 of the rule.

*Fourth:* We next consider whether there is any other exception to the common law rule which would apply to the facts alleged in the complaint herein.

Appellant apparently attempts to employ such an exception and in support of his position relies upon a statement in *Indiana Harbor Belt R. Co.* v. *Jones* (1942), 220 Ind. 139, 145, 41 N. E. 2d 361, as follows:

"And if the probable presence of the children raises a duty to them of ordinary care, this may be violated before the children arrive upon the premises, by leaving *things undone* which ought to have been done in anticipation of their coming. This may be 'passive' but nevertheless it is negligence." (Our italics.)

That was a case in which a boy eight years of age was killed by the falling of a heavy door while playing in an empty freight car standing on a switch track. The *thing* which it was alleged as left *undone* in that case and to which the court referred in the statement above quoted, was the independent negligent act of the trainman in failing to hook the door. The complaint there charged four acts of negligence, (1) failure to fence the tracks, (2) to put up warning signs, (3) failure to maintain a watchman, and (4) failure to lock the door so that it would not fall. This court, at p. 143, of 220 Ind., disposed of the first three allegations as follows:

> "A railroad company owes no duty to children living in the vicinity of its switch yards to erect fences or other barriers to prevent their trespassing. [Citing authorities] Nor is it obligated to have a watchman to keep children off its right of way and cars. [Citing authorities] Signs are not required."

The complaint there was sustained upon the sole allegation that decedent and other children were playing on the floor of a gondola type railroad car "when without warning the heavy door at the end of the car fell and killed decedent." The charge of negligence was the failure to lock the door so it would not fall.

Further, in *Indiana Harbor Belt R. Co.* v. *Jones* (1942), 220 Ind. 139, 41 N. E. 2d 361, *supra*, at page 145, this court said:

> "If he [the one who owns or controls the property upon or by which the injury occurs] is bound to know of the presence of children he must also know from common experience that they are frequently heedless of danger, and he ought not start in motion something that is likely to cause their injury."

However, the complaint in the case at bar contains no allegation that appellees started anything in motion, or permitted any act, or failed to do something that they should have done after the said children were on the premises, which resulted in an injury to the child or which put it in a position of peril.

The failure to keep said children out of the house—off the premises—is not something "which ought to have been done in anticipation" of the coming of the children within the meaning of those words as used and applied in the Indiana Harbor Railroad case, *supra*. As above stated, in that case the thing left "undone" was the alleged failure to hook the door to the car so that it would not fall on the children *after they were in the car*, either as trespassers or licensees by permission or sufferance.

The complaint in the case at bar does not charge any independent act of negligence of appellees either active or passive, such as the failure to lock the door in the Indiana Harbor Railroad case, *supra*, which might have caused injury to the children of appellant. As above stated, the only act of negligence charged by appellant is the failure to barricade the entrance—to keep the children out of the house. This is not sufficient to bring the case at bar within the factual circumstances in the Indiana Harbor Belt Railroad case, and it does not lend support to appellant's position.

*Cleveland, etc., R. Co.* v. *Means* (1915), 59 Ind. App. 383, 104 N. E. 785, 108 N. E. 375, relied upon by appellant is also a case where a child was injured after he was on the premises by an independent negligent act of appellant's agents. In that case it was held that the duty to protect children arose *after* they were on the premises as licensees by permission and at page 402, of 59 Ind. App., the court said:

". . . such company owes no duty to either [adult or infant] to keep a lookout for his presence, but it owes to each the duty of ordinary care after there is knowledge of such presence, actual or constructive, . . . .[Citing authorities]."

In *Cleveland, etc. R. Co.* v. *Means, supra,* as in *Indiana Harbor Belt R. Co.* v. *Jones, supra,* there was an independent act of negligence which caused the injury to the permissive licensee after he had entered upon the premises. In view of the court's statement that appellant owed "no duty to either [adult or infant] to keep a lookout for his presence," it is difficult to see how this case in any way supports appellant's contention that appellees in the case at bar owed a legal duty to barricade the entrance to the dwelling house described in his complaint.

Appellant also relies upon *Penso, by Next Friend* v. *McCormick et al.* (1890), 125 Ind. 116, 25 N. E. 156, 9 L. R. A. 313, 21 Am. St. Rep. 211, *supra,* to sustain his contention that appellees owed a duty to the children of appellant to barricade the entrance to the dwelling house to keep them from entering. The facts in that case, as alleged in the complaint, are that appellees had for many years operated a saw mill in the town of Rockfield, Indiana; that the mill was situated in the most public part of town, and that the grounds surrounding the mill were not and never had been enclosed, and were used by the citizens of the town as a passage-way from one street to another, and as a playground for the children of the town; that for months immediately prior to the time of the injury to appellant there was a mound of ashes from four to five feet high which had been deposited from time to time by appellee on the mill grounds; that the heat from the ashes had escaped and the mound constituted a favorite place where children were accustomed to

gather and play; that on the day of the injury, without giving any notice either to the appellant or to the public generally, the appellees excavated and removed about twenty bushels of ashes from one side of the mound and filled the cavity so made with hot burning ashes from the fire-box of the mill engine; that no barriers were erected and no warning given that the mound of ashes at that point was dangerous; and that the surface of the hot ashes soon cooled to the point where they presented the same appearance as the remainder of the mound while underneath the surface was a smoldering, burning heap, and while in this condition appellant crossing the mill-yard crossed over the mound of ashes, as he was accustomed to do, and without any fault on his part stepped into the mass of burning cinders and suffered severe injuries. In this case it will be noted that the facts alleged show an inherently dangerous condition (the hot ashes) which was unknown to appellant and which resulted from an independent negligent act of the appellees. No such a situation is alleged in the complaint in the case at bar. The Penso case lends no support to appellant's contention and is not authority for sustaining his complaint as against a demurrer for want of facts.

Finally, appellant asserts that since the failure to give notice or warning of danger and to barricade the entrance to an abandoned coal mine was, under the circumstances, in *Drew* v. *Lett* (1932), 95 Ind. App. 89, 182 N. E. 547, *supra,* held to be actionable negligence, it then follows that the failure to barricade the entrance to the dwelling house in the case at bar must be so held. The complaint in the Drew case was held to state a cause of action "upon a theory which seeks' to invoke the doctrine of an 'attractive nuisance' as applied to children *non sui juris.*" Appellant admits

that the attractive nuisance doctrine does not apply in the case at bar and we have concurred in that conclusion. Nevertheless, he asserts a principle which was applied in the Drew case and which is stated at p. 97, 95 Ind. App., as follows:

" 'It is the apparent probability of danger rather than the rights of property that determines the duty and measure of care required of the author of such a contrivance, for ordinarily the duty of avoiding known danger to others may under some circumstances operate to require care for persons who may be at the place of danger without right.' ",

but makes no application of this principle to the facts stated in his complaint, and we are unable to see how it can be so applied. The authorities relied upon by appellant do not support his contentions, and the rule which he seeks to invoke does not apply to the facts stated in his complaint.

It is the law in Indiana that persons who maintain a dangerous agency or instrument on their premises owe a duty to infants and adults alike to use reasonable care to protect or guard the dangerous agency or instrument, or to give timely warning of such condition after having knowledge of the same. And where the person could have reasonably anticipated that children or other persons might come into contact with the dangerous agency or instrument, and such a contact is reasonably sure to inflict serious injury, he should take whatever steps are reasonably necessary to prevent injury to those who are likely to come into contact therewith. *Harris* v. *Indiana General Service Co.* (1934), 206 Ind. 351, 189 N. E. 410, *supra*.

A semi-constructed dwelling house is, in our opinion, not a dangerous agency or instrument within the meaning of the rule above stated.

While under the circumstances in the Harris case, *supra,* there may have existed the duty to guard the high voltage tower in question, but, if so, it arose by reason of the inherently dangerous condition of the tower due to a specific independent act of negligence of the company (defendant). This is not the circumstance presented in the case at bar, and it does not follow that if under the circumstances in the Harris case the company owed a duty to trespassers or licensees by sufferance or by permission to guard the tower, that appellees owed a duty to the children of appellant to barricade the entrance to the semi-constructed dwelling house to keep them and other children in the vicinity who might come there to play from entering on the premises. The duty here, if any, arose after the children of said deceased had become licensees by sufferance. Appellees owed no legal duty to keep appellant's children off their premises (out of the semi-constructed dwelling). The authorities in Indiana and other jurisdictions support this conclusion.

In *Indiana Harbor Belt R. Co.* v. *Jones* (1942), 220 Ind. 139, 41 N. E. 2d 361, *supra,* this court held that a railroad company owes no duty to children living in the vicinity of its switch yards to erect a fence or other barricades to keep them off the tracks (to prevent their trespassing), or to maintain a watchman or erect signs to keep them off the premises.

In *Cleveland, etc. R. Co.* v. *Means* (1915), 59 Ind. App. 383, 402, 104 N. E. 785, 108 N. E. 375, *supra,* the Indiana Appellate Court, in considering the duty of a railroad company to a trespasser, held that there was no duty to either an infant or adult trespasser to keep a lookout for his presence.

The Appellate Court in this state again held in *Holstine* v. *Director, etc. Railroads* (1922), 77 Ind. App.

582, 599, 134 N. E. 303, that a railroad company owes no duty to adult or infant trespassers "to keep a lookout for his [their] presence, but it owes each of them the duty of ordinary care after it has actual or constructive knowledge of such presence, . . . ."

In *Smith* v. *Hines* (1925), 212 Ky. 30, 278 S. W. 142, 45 A. L. R. 980, it was held that a railroad company owed no duty to children to take precaution to safeguard them or warn them of the danger in climbing the handholds thereon to the top of a freight car standing in its yard when the company knew of the custom of children to play on the car. At page 143, 278 S. W., it is said:

"In the case now before us there was no dangerous mechanism or instrumentalities about the car. The handholds and ladder complained of were not dangerous. . . . The child was not caused to fall from the car by the movement of any of its parts which, to his indiscreet judgment, seemed to be safe; he fell by his own inadvertence and misfortune."

*Kayser* v. *Lindell* (1898), 73 Minn. 123, 75 N. W. 1038, was an action for damages because of injuries suffered by a three and one-half year old boy who fell from an unprotected wall on defendant's premises while playing thereon. The court there held that the property owner was not liable and, at page 1039, 75 N. W., said:

"It is true that, if the owner of premises keeps upon them a concealed trap, and a person coming upon the premises by invitation is injured thereby, he may recover. But there was no mantrap in this case. The wall was plain to be seen. The child knew it was there, and fell off of it in the daytime. While the owner of premises may owe more duty to a child than to an adult coming upon his premises by implied invitation, yet he is not bound to guard every stairway, cellarway, retaining wall, shed,

tree, and open window on his premises, so that such a child cannot climb to a precipitous place and fall off."

In *McHugh* v. *Reading Co.* (1943), 346 Pa. 266, 30 A. 2d 122, 145 A. L. R. 319, it was held that there was no duty to fence or otherwise safeguard steps whereby children were accustomed to gain access to an abutment wall, and at page 123, 30 A. 2d, it is said:

"Liability to trespassing children has uniformly been limited to accidents arising from latent dangers, such as unguarded machinery, live wires, pits or open trap doors. This distinction results from one of the conditions of liability set forth in the Restatement of Torts, §339, clause (c), that 'the children because of their youth do not . . . realize the risk involved . . . .' In the comment (p. 925) on this clause the Restatement says: 'A possessor of land is . . . under a duty to keep so much of his land as he knows to be subject to the trespasses of young children free from artificial conditions which involve an unreasonable risk of death or serious bodily harm to them. This does not require him to keep his land free from conditions which even young children are likely to observe and the full extent of the risk involved in which they are likely to realize. The purpose of the duty is to protect children from dangers which they are unlikely to appreciate and not to protect them against harm resulting from their own immature recklessness in the case of known danger.' "

In *Coon* v. *Kentucky & I. T. R. Co.* (1915), 163 Ky. 223, 173 S. W. 325, L. R. A. 1915D 160, the sole act of negligence alleged was the failure of defendant to guard and protect a retaining wall to prevent children from climbing upon it when the defendant knew that the children were accustomed to play on top of the wall. A demurrer was sustained and recovery denied.

In *Sanders* v. *Baird* (1938), 195 Ark. 535, 112 S. W. 2d 966, it was held that no duty rested upon defendant

to build a fence or other inclosure around a signboard to prevent children who were accustomed to playing in the vicinity from climbing upon the sign.

It was held in *O'Callaghan* v. *Commonwealth Engineering Corporation* (1928), 247 N. Y. 127, 159 N. E. 884, 60 A. L. R. 1424, that there was no duty resting upon a building contractor either to prevent children from using steps leading to the roof of a shed which was erected over a sidewalk adjacent to a building under construction or to protect them from falling off the steps by constructing proper railings. At page 885 of 159 N. E. the court said:

"Steps without railings, even ladders, are not inherently dangerous objects which make the streets unsafe even for children. Children do often climb in their play upon fences, ladders, or any other object that may be at hand. They do at times fall and break limbs. The play of boys is not without its hazards. For some boys it would otherwise be without zest. Even if there be some duty on one lawfully using the city streets for the construction of a building not to create a condition which is inherently dangerous for children who might play there, he is not under any affirmative duty to make the place entirely safe for children or to protect them against the ordinary hazards of boyhood. Accidents do happen, and it may hardly be said that the defendant was under a duty to protect the children from possibility of a fall from a flight of steps which presented no dangers greater than boys encounter in their usual play. As well might it be said that an owner who plants a tree on the side of a highway should support the limbs lest they break under the weight of a boy who may climb into it, or that an owner may not place a wall in front of an area lest children walking in play on the top should fall.

"Indeed, in this case, if the defendant had placed a rail on the side of the steps it may be doubted whether the game of sliding down the rail would

not have been quite as attractive and quite as dangerous as the game of climbing the steps."

The building of dwelling houses is an essential element in the life and progress of society in general. The Appellate Court of Indiana said, in *Holstine* v. *Director, etc., Railroads* (1922), 77 Ind. App. 582, 134 N. E. 303, *supra,* at page 593, " 'The business of life must go forward,' " and, further,

> "Restrictions upon the use of property diminishes *pro tanto* the beneficial character of the use, and hence the law imposes restrictions as seldom as possible, and never except upon the strongest grounds. The law which is reluctant to impose restraint upon an owner's use of his land even when causing damage beyond his boundary, is more unwilling to impose restraint upon a user which is dangerous only to those who intrude upon his land."

And, at page 595:

> "If a railroad company in a case like the present be held under a duty, such duty is not likely to be set lower than a duty to use such an amount of care, to use such precautions as will render it improbable that harm will result to children found upon its right of way. Such a rule would in many cases require precautions which could only be carried out safely at an expense or in a manner practically prohibitive of beneficial user. As said by Lord Justice MacDonald in *Ross* v. *Keith* (1888), 16 Scotch Session Cas. 4th Series 86: 'To hold that every piece of ground which contains some place or something that might be dangerous to children must be so fenced that children can enter only by what is practically a mode of siege would be to lay an intolerable burden on proprietors.' Any less efficacious method would probably not be regarded as affording reasonable probability that no child catastrophe would occur. Such a rule in the majority of cases would probably mean that the owner of the land must make his ground practically im-

pregnable to children, that is, child proof. This in many instances would compel the cessation of profitable user. Where the existence of a duty is once admitted, the danger that the jury will be too swift to favor the breach of it does not afford a sufficient reason for abrogating the duty. But when the question is whether a duty shall be held to exist, whether in a particular case the law ought to impose a duty, when the case is on the border line, and when strong reason can be given against establishing the duty, then the probability that the rule contended for would often be misapplied may well be given great and even decisive weight in influencing courts against the establishment of the alleged duty."

It is also said in *Cleveland, etc. R. Co.* v. *Means* (1915), 59 Ind. App. 383, 104 N. E. 785, 108 N. E. 375, *supra,* at page 407:

"Its obligation is simply that which should attach and under the law 'attaches to every member of society when he undertakes to exercise a personal right in a manner which may affect the welfare or safety of another member, the obligation of reasonable care . . . (and this) may, at times, seem to be a burden, but its enforced observance is never a wrong, whether applied to railroad companies or to individuals.' *Edgington* v. *Burlington, etc., R. Co.* [(1902), 116 Iowa 410, 90 N.W. 95, 57 L.R.A. 561, and annotations] *supra* 422, 446. Reasonable care in such cases does not impose any duty where the presence of a child on its tracks is merely possible or where such duty or care imposes on the company an unreasonable limitation on the usual and ordinary use of its property. A correct and pertinent statement affecting this phase of the question will be found in the case of *Chicago, etc. R. Co.* v. *Krayenbuhl* (1902), 65 Neb. 889, 902, 904, 91 N. W. 880, 881, 883, 59 L. R. A. 920, where it is said: 'It is true, as said in *Loomis* v. *Terry* [1837], 17 Wend. [N. Y.] *496, *500, 31 Am. Dec. 306, "the business of life must go forward"; the means by which it is carried forward cannot be

rendered absolutely safe. Ordinarily, it can be best carried forward by the unrestricted use of private property by the owner; therefore the law favors such use to the fullest extent consistent with the main purpose for which, from a social standpoint, such business is carried forward, namely, the public good. Hence, in order to determine the extent to which such use may be enjoyed, its bearing on such main purpose must be taken into account, and a balance struck between its advantages and disadvantages. If, on the whole, such use defeats rather than promotes the main purpose, it should not be permitted; on the other hand, if the restrictions proposed would so operate, they should not be imposed. . . . Hence, in all cases of this kind, in the determination of the question of negligence, regard must be had to the character and location of the premises, the purpose for which they are used, the probability of injury therefrom, the precautions necessary to prevent such injury, and the relations such precautions bear to the beneficial use of the premises.' "

*Puchta* v. *Rothman* (1950), 99 Cal. App. 2d 285, 221 P. 2d 744, 748, *supra,* was a case in which the allegations of negligence were that defendants "wilfully removed a stair-way barricade, theretofore erected by said defendants as a safety measure, and wilfully *failed to guard, enclose, or block said stairway and roof."* (Our italics.) There, as in the case at bar, appellee was engaged in the construction of a building which, at the time of the alleged injury, was partially completed. The second floor of the building was entirely covered with tar paper and under the paper and totally concealed by it was a hole for a ventilator or skylight. The stairway had been completed to the second floor and appellee knew that children played in the partially constructed building and, in order to protect them from a specific known danger on the second floor,

had barricaded the stairway. The barricade was removed and while the stairway was unprotected appellant, a ten-year-old child, went to the second floor of the building to play and stepped upon the tar paper over the concealed opening, fell through to the first floor and was seriously injured. A demurrer was sustained on the ground that the allegations of the complaint were not sufficient to state a cause of action within the attractive nuisance rule. While we do not here either approve or disapprove the ruling on the demurrer, yet some of the reasoning in the opinion applies with equal force to the facts in the case at bar. At page 747, of 221 P. 2d, the court said:

"It is self-evident that any barricade at the foot of the stairway of this building, of sufficient size and strength to keep children from going up the stairs, would destroy the very purpose for which the stairs were built and retard the completion of the building."

We believe it equally true in the case at bar that any barricade at the entrance to the semi-completed house, of sufficient size and strength to keep children out of the building, would destroy the very purpose for which the opening is maintained during the construction of the building. It is common knowledge that carpenters and other workmen use such openings as a means of ingress and egress into and out of the building in the performance of their duties in connection with the construction thereof, and to require them to remove and replace the barricade every time they went in or out of the building would delay its completion and place an undue burden on the owner of the property. *Chicago, etc. R. Co.* v. *Fox* (1906), 38 Ind. App. 268, 275, 70 N. E. 81.

The owner or builder of a dwelling house is not an insurer of the safety of children who come upon or into the building while under construction either as trespassers or licensees, by permission or sufferance, for the purpose of play.

"The simple fact that a child *non sui juris* is injured will not import negligence to a defendant. It may be argued that a child of tender years is incapable of protecting itself and hence the law imposes the duty upon landowners. The primary duty of protecting children by nature and by law devolves upon their parents who have legal power to control their actions and whose moral duty it is to keep their children from entering upon dangerous premises—an obligation equal at least to the moral obligation of the landowner[2] to fence them out." *Holstine* v. *Director, etc. Railroads* (1922), 77 Ind. App. 582, 594, 134 N. E. 303, *supra*.

It cannot be said that either the child or the deceased, in this case, could have been injured simply by coming in contact with said building. Nor could either of them have been injured therein without some overt act by one of them, which directly brought about his or her injury.

It is not alleged that the stepladder on which the child herein was "caught" or "pinioned" was in any way more dangerous than any other of like kind, or that it was in any way defective or insecurely placed. Neither is it alleged that it broke, fell or moved. It appears from the complaint that the stepladder was perfectly safe for the purpose for which it was being used.

It cannot be said that there is anything uncommon or unusual about a stepladder. They are present in

2. See: Harvard Law Review, Vol. 11, pp. 349 and 434 for a comprehensive treatment of the liability of landowners to children entering without permission.

nearly every home and the danger of falling from them is known to children as well as to adults. While there may be some danger incurred by a small child who climbs a stepladder, it cannot be said that such danger is uncommon or of such a nature that reasonably prudent men would, under the circumstances related in appellant's complaint, put something across the entrance in the building described in the complaint to keep children from entering and climbing on a stepladder placed as described in the complaint.

Measured by any rule to which our attention has been directed or which by our own research we have been able to find, it cannot be said that a partially constructed building is such a dangerous instrument or instrumentality as to require the owner or builder to erect something across the entrance thereto for the purpose of preventing children of the vicinity from playing therein. When the "location of the premises, the purpose for which they are used, the probability of injury therefrom, the precautions necessary to prevent . . . and the relations such precautions bear to the beneficial use of the premises" are considered in relation to the facts as stated in the complaint herein, we must conclude that appellees were under no legal duty to barricade or place something across the entrance to the semi-completed building to keep appellant's children from entering and playing therein.

Since the rescue doctrine under which appellant seeks to recover applies only where the situation which invites rescue is created by the tortious act of the defendant or by one for whom he is responsible, 65 C. J. S., Negligence, §124, p. 738, *supra;* and the only tortious act here alleged is the failure to barricade an entrance to the building, and since ap-

pellees owed no legal duty to the child, who became frightened while climbing the stepladder, to barricade the entrance to the building to keep him out, appellant cannot recover under the rescue doctrine.

The complaint herein fails to show a legal duty owing by appellees to appellant's children, hence one of the elements of actionable negligence is absent and the complaint does not state facts sufficient to state a cause of action. A demurrer thereto for this reason was properly sustained and the judgment of the trial court should be affirmed.

Judgment affirmed.

Emmert, C. J. and Gilkison, J. dissent with separate opinions.

## DISSENTING OPINION

GILKISON, J.—I am unable to agree with the majority opinion for the following reasons:

Of course, the general principles of law applicable to negligence cases, consuming many pages of the majority opinion, are correct. There is no reason for their incorporation in the opinion since there is no dispute concerning them. But I cannot agree with the statement making the law in Indiana, as follows:

"The general rule is that no different or higher duty exists with respect to an infant trespasser than would exist in the case of an adult trespasser, so that ordinarily[1] there is no duty toward an infant trespasser except to refrain from willful or

1. Even this general rule might be rationalized and modified by the statement so often made by the authorities, that liability to infant trespassers is incurred "where the owner knows, or as a reasonable person ought to apprehend, the danger of resultant injury to children too young and unexperienced to understand the fact or meaning of trespass, or to exercise judgment, or care for their own safety." This, it seems, always has been considered at least not an "ordinary" situation. 45 C. J., §155, pp. 758, 760. Note 24 and authorities there cited.

wanton injury. Accordingly, it has been held that ordinarily there is no duty to anticipate the presence of infant trespassers, to keep a lookout for them, to guard against their intrusion, or to keep property in such safe, proper, or particular condition as not to endanger them if they trespass thereon. Infant trespassers ordinarily take the premises as they find them."

This quotation is from 65 C. J. S., Negligence, §27 pp. 450, 451. No reason is given in the opinion why this paragraph should be set out as the law instead of that part of the same section set out two paragraphs later in the section. I think the latter paragraph more correctly states the law as it has always been in Indiana, and as it should be today and always. It is as follows:

"In some cases, however, there are expressions to the effect that very young children cannot be trespassers or that the rule regarding trespassers has no application where children of immature years are concerned. A child without discretion, although a trespasser, occupies a legal attitude similar to that of an adult who is not a trespasser. When the infant is where he has a right to be and the trespass is technical, recovery is not barred by the trespass."

The rule approved in the majority opinion is, in fact, based upon the Holmes decision in *United Zinc & Chemical Co.* v. *Britt* (1922), 258 U. S. 268, 42 Sup. Ct. 299, 66 L. Ed. 615, and cases in foreign jurisdictions based wholly upon that decision. That rule is not supported by any Indiana decision noted in *Corpus Juris Secundum*. Some recent Indiana decisions have attempted to put Indiana in line with the Holmes decision above noted. With these decisions I am in dissent.[2] This rule,

2. These Indiana cases are: *Anderson* v. *Reith-Riley Const. Co.* (1942), 112 Ind. App. 170, 172, 44 N. E. (2d) 184. *City of Evansville* v. *Blue* (1937), 212 Ind. 130, 8 N. E. (2d) 224. *Plotzki* v. *Standard Oil Co.* (1950), 228 Ind. 518, 92 N. E. (2d) 632.

in its inception, seems to have been created by a mind incapable of giving to youth, particularly that period which we know as the *non sui juris* period, its proper place and proper protection, in a civilized Christian community. The majority opinion fails to note, that which is directly charged in the complaint, that the little boy, John C. Neal, who was "caught, pinioned upon the stepladder" was, at the time, but three years old. To me it is inhuman to say, that "no different or higher duty exists with respect to [such] an infant trespasser than would exist in the case of an adult trespasser." A civilized Christian state cannot long tolerate such a perversion of the laws of nature, and of the experience of all civilized people.

The rule, which I think should govern in this case as set forth above, is supported by Indiana decisions, as noted by *Corpus Juris Secundum,* as follows: *Penso, by Next Friend* v. *McCormick et al.* (1890), 125 Ind. 116, 25 N. E. 156, 9 L. R. A. 313, 21 Am. St. Rep. 211; *Wise* v. *Southern Indiana Gas & Electric Co.* (1941), 109 Ind. App. 681, 34 N. E. 2d 975; *Drew* v. *Lett* (1932), 95 Ind. App. 89, 182 N. E. 547. I have cited many additional Indiana cases supporting it in my dissent in the recent case of *Plotzki* v. *Standard Oil Co.* (1950), 228 Ind. 518, 527 et seq., 92 N. E. 2d 632, 636, to which citation is respectively made as a matter of brevity. Probably the last Indiana case so holding is *Borinstein* v. *Hansbrough* (1948), 119 Ind. App. 134, 82 N. E. 2d 266. To illustrate the untenable position in which the law is placed by the majority opinion, I cite *Young* v. *Harvey* (1861), 16 Ind. 314, in which this court held that one who dug a well six feet deep and forty-two inches in diameter on an unenclosed lot owned by him, leaving it uncovered, so that a trespassing horse fell

into it and was killed, was liable in damages to the owner of the horse for its value. This court then reasoned the matter thus, at page 315:

"If the probability was so strong as to make it the duty of the owner of the lot, as a member of the community, to guard that community from the danger to which the pit exposed its members, in person and property, he is liable to an action for loss occurring through his neglect to perform that duty.

"We think any reasonable man, of ordinary understanding and extent of observation of the ways of life, would say that the probability of injury to others, under the circumstances, from leaving the well in question in the condition it was, was not only strong, but that it amounted almost to certainty—a probability as strong as would arise from an unguarded cellar on a street in the city . . . ."

This case (correctly I think) has been consistently sustained and followed by this and the Appellate Court. See *Sisk* v. *Crump* (1887), 112 Ind. 504, 14 N. E. 381; *Cleveland, etc., R. Co.* v. *Means* (1914), 59 Ind. App. 383, 104 N. E. 785, 108 N. E. 375. See also, an interesting and instructive article, 26 Indiana L. J. pp. 266 to 273, criticizing the majority opinion in the Plotzki case.

So we have the anomalous situation that if a trespassing horse, cow, or other domestic animal is injured or killed because of an unguarded, unfinished structure, the owner of the structure is liable to the owner of the animal for the injury sustained. But, if the injury or death be of a little three year old boy, there can be no recovery. Apparently our law, as set forth in the majority opinion, considers the little boy a worthless liability. But the horse or cow having a present dollar value, rates much higher and its owner may collect damages for its destruction or injury.

I cannot follow this reasoning. It means that the law has a greater respect for the rights of property than for the life and safety of little children. As I view it, it is a tragedy to make our law thus.

The majority opinion labors through many pages in an attempt to establish that it must be averred "that the appellees, or one of them, maintained a condition within the semi-completed house that would likely be dangerous to children." I think the averments of the complaint, as set out in the majority opinion on this proposition, are quite sufficient as against the demurrer. It is averred that this little boy went into the building that had the side walls and the roof erected. No flooring had been placed on the joists, or rafters constructed on the first or second floors. One opening was left for the installation of a door, and no barricade whatever was placed in this opening. Apparently the work had been temporarily abandoned. A stepladder was inside the structure resting on the joists on the ground floor, and reaching to the joists on the second floor. It is difficult to imagine a more hazardous place for a little child to play.

Every adult person is charged with knowledge of the natural propensities of little children to rove and play, and if a person engages in making a structure on a lot in a populous city or town, he owes a community obligation to keep the structure in such condition that little children may not be injured if he allows them to play about or in the structure.

The law, respecting this situation, is well compended in Vol. II, Restatement of the Law Torts, Negligence §339, pp. 920, 921, thus:

"It is not necessary that the defendant should know that the condition which he maintains upon his land is likely to attract the trespasses of children or that the children's trespasses shall be due

to the attractiveness of the condition. It is sufficient to satisfy the conditions . . . that the possessor knows or should know that children are likely to trespass upon a part of the land upon which he maintains a condition which is likely to be dangerous to them because of their childish propensities to intermeddle or otherwise. Therefore, the possessor is subject to liability to children who after entering the land are attracted into dangerous intermeddling by such a condition maintained by him although they were ignorant of its existence until after they had entered the land, if he knows or should know that the place is one upon which children are likely to trespass and that the condition is one with which they are likely to meddle."

In *Cleveland etc. R. Co.* v. *Means* (1941), 59 Ind. App. 383, 405, *supra,* the law is correctly stated by Hottel, J., thus:

"The owner of the premises owes the adult licensee no duty of active vigilance to discover his presence or his surroundings while on his premises by permission only, because such adult is presumed to go there with the understanding that he will take the premises as they are, with all the uses to which the owner may subject them while there, and that he will look after his own safety and welfare, and that he has discretion and judgment to do so. In other words, the owner of the premises does not know and has no reason to anticipate that such adult licensee will place himself in a situation of peril. *To indulge such an assumption when a child licensee of immature years, judgment and discretion is involved would be against our common understanding and reason and lacking in every element of humanity and justice. Constructive knowledge on the part of a railroad company that children non sui juris are on its tracks, or probably will be on its tracks, at a particular place, of necessity, carries with it knowledge of the peril or probable peril and helpless condition of such children, and hence the vigilance or care, which in the first instance was only negative in character, may become affirmative in the second instance and*

*require that the company in such case shall, in*
*some degree, at least, exercise for the child the*
*care and vigilance which it must know the child*
*is unable to exercise for itself, and, must not, by*
*an affirmative act of omission or commission, ex-*
*pose such child to a danger which it knows, or has*
*reason to believe is unknown to and not understood*
*or appreciated by such child. The duty of ordinary*
*care which the owner of premises owes to the*
*child licensee thereon is recognized and affirmed*
*even in those jurisdictions which refuse to recog-*
*nize or apply the attractive nuisance doctrine, as*
*evidenced by the case of Wheeling etc. R. R. Co.*
v. *Harvey, supra."* (77 Ohio St. 235, 83 N. E. 66,
75, 122 Am. St. 503, 19 L. R. A. [N. S.] 1136 and
the instructive annotation therein). (My italics).

In *City of South Bend* v. *Turner* (1901), 156 Ind.
418, 423, 60 N. E. 271, where a similar question was
presented to this court, speaking by Hadley, J., we said:

"We could not assume that a boy six and a half
years of age was so advanced in knowledge as
to be able to know when he was in a place where
he ought not to be, and to appreciate the evidences
and presence of danger; Cleveland, etc. R. Co. v.
Klee, 154 Ind. 430, . . . ."

In 38 Am. Jur., Negligence, §205, p. 888, we find an
excellent and well supported statement of the law on
this proposition, thus:

"It is a fact universally recognized by the courts
that children may be of such tender years as to
be without mental capacity to understand and ap-
preciate the perils that may threaten their safe
being, and as not to be charged with personal con-
tributory negligence for having failed to avoid
injury from such perils, by reason of the fact that
they are presumed conclusively to be incapable of
contributory negligence."

Many additional cases could be cited, asserting the
same legal principle, but that would only extend this
dissent. It is basically correct to say, that if the struc-

ture being erected is in a populous neighborhood in a city or town where little children live and play, and is in such condition that they might be injured if they play therein or thereabout, the builder of such a structure has constructive knowledge that children will play therein or thereabout and this carries with it, of necessity, knowledge of the peril or probable peril of such children and of their helpless condition. Under these conditions, vigilance and care upon the part of those who are erecting the structure become affirmative and require that they exercise for the little children the vigilance and care which they must know the children are incapable of exercising for themselves. The builder may not, by an affirmative act of omission or commission, expose such children to dangers. The liability is imposed agreeable with the general law of negligence and not because of any supposed peculiarity of the law of attractive nuisance.

Of course, the demurrer admits the truth of all the properly pleaded facts. Certainly the facts pleaded in the case at bar are from every standpoint ample to state a cause of action in the plaintiff. Since this is true, it was error for the trial court to sustain the general demurrer thereto. *Borinstein* v. *Hansbrough* (1948), 119 Ind. App. 134, 142, *supra; Lewis* v. *Cleveland, etc. R. Co.* (1908), 42 Ind. App. 337, 341, 84 N. E. 23, and cases cited.

Unprejudiced writers have adversely criticized the propensity of courts attempting abstractly and arbitrarily to rule, as a matter of law, that certain particular conditions may and others may not be such as to state a cause of action in similar situations. 26 Indiana L. J., p. 266, *supra;* 9 Oregon Law Review, pp. 190, 192, 193; Vol II, Restatement of the Law Torts §339, pp. 920, et seq. To say, as in the majority

opinion, that the stepladder in question under the existing conditions as pleaded was not dangerous for a three year old boy to play with is an arbitrary and unreasonable statement. The trouble with this part of the opinion is that it ignores the situation as directly pleaded in the complaint, and considers the stepladder apart as a harmless device; it should have considered all the pleaded facts including that there was no floor in the house, there were only the joists. A slight fall from the stepladder to the joists might well have caused the death of the three year old boy as it did his mother. I think that anyone acquainted with children and their propensities would naturally expect that there would be danger of serious injury or death to an unattended three year old boy who would climb a stepladder situated as this stepladder was. I think we should decide negligence cases agreeable with the well defined rules governing such cases, and that when little children are involved, we should definitely cease determining such cases arbitrarily as a matter of law, ignoring completely the facts as averred in the complaint.

Of course, the building of dwelling houses is an essential pursuit in any civilized state. No authority need be cited to establish this truth. It is in the nature of a self-evident truth. The plaintiff in this case not only does not assert to the contrary, but by bringing this action, he affirms that truth. By his complaint, he raises only the question whether or not in exercising this essential pursuit the builder must take reasonable precaution to protect the little *non sui juris* children of the neighborhood from death or serious injury. Our courts have so frequently decided this question in the affirmative that it seems a supererogation to again recite the cases. At the risk of being so considered, I quote from a few cases as follows:

From Byron K. Elliott, C. J.:

"The cases last cited all recognize the rule that children of tender years are not to be treated as persons of mature years. This is a reasonable and humane rule, and any other would be a cruel reproach to the law; but the law merits no such reproach, for, throughout all its branches, whether of tort or contract, there runs . . . a line distinguishing children of years too few to have judgment or discretion, from those old enough to possess and exercise those faculties. This is a doctrine taught by every man's experience and sanctioned by our law. A departure from it would shock every one's sense of justice and humanity." *The Indianapolis, Peru and Chicago Railway Company* v. *Pitzer* (1886), 109 Ind. 179, 183, 6 N. E. 310, 10 N. E. 710, 58 Am. Rep. 387, and many authorities there cited.

Again, from Olds, J.:

"It is a well recognized doctrine that persons are required to use greater care in dealing with children of tender years than with older persons who have reached the age of discretion, and that greater care is required to avoid injury to them even when they are trespassers." *Penso, by Next Friend* v. *McCormick* (1890), 125 Ind. 116, 122, *supra.*

From Montgomery, J.:

"Conceding, as the demurrer does, that appellant knowing the probable consequences, maintained the foot log at a place and in a condition to imperil the lives of persons, invited and induced to use it in ignorance of their danger, and that in these circumstances appellant's minor son, [age 9 years] unable to comprehend his peril, fell from the log because of its unsafe condition, and was drowned, we think a cause of action is stated, and that the complaint was rightly held to be sufficient." *Indianapolis Water Co.* v. *Harold* (1908), 170 Ind. 170, 173, 83 N. E. 993, and cases there cited.

From our Appellate Court, speaking by Moran, J.:

"However, it is not an open question in this State that an individual or corporation is liable for injuries to a child *non sui juris* caused by leaving unguarded and exposed machinery or surroundings, which are of such a nature and character as to naturally tempt and allure children to play with or otherwise use the same. Chicago, etc., R. Co. v. Fox (1906), 38 Ind. App. 268, 70 N. E. 81; 1 Thornton, Negligence §435; Lewis v. Cleveland, etc. R. Co. (1908), 42 Ind. App. 337, 84 N. E. 23." *City of Indianapolis* v. *Williams* (1915), 58 Ind. App. 447, 454, 108 N. E. 387. See, also cases cited in *Plotzki* v. *Standard Oil Co.* (1950), Dissent, 228 Ind., pp. 527, 532, 533.

From Hamilton, J.:

"Here we have a situation wherein the complaint alleges . . . that the appellants maintained a junkyard immediately adjacent to a public street and sidewalk, where they negligently stacked piles of irons and angle beams, which extended into the sidewalk; that on top of said piles of iron and angle beams which were four or five feet high appellants negligently and carelessly laid loose iron and angle beams in such a manner that they tottered and would fall easily from said pile when any force, pull or tug was applied to them; that for many years children had been in the habit of climbing upon said piles of irons and angle beams all of which facts were known to appellants, and they took no precautions to prevent such practice.
". . . .
"Neither do we feel that it is necessary in this opinion to enter upon an extended discussion of the law applicable in 'attractive nuisance' cases, except to say that we hold that the facts alleged in the complaint are sufficient to render the appellants liable to appellee, if established by the evidence. [Citing authorities]." *Borinstein* v. *Hansbrough* (1948), 119 Ind. App. 134, 142, 143, 82 N. E. (2d) 266.

In Vol. II, Restatement of the Law Torts, Negligence §339, pp. 920 et seq. under the title "Artificial Conditions Highly Dangerous to Trespassing Children," a statement of the law, applicable to the facts pleaded in the complaint in the instant case, is made, thus:

"A possessor of land is subject to liability for bodily harm to young children trespassing thereon caused by a structure or other artificial condition which he maintains upon the land, if

(a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and

(b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and

(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, and

(d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein."

The opinion takes many pages to show that to temporarily barricade the single doorway to the house being constructed, so that a three year old boy could not enter therein when the workmen were away, would be such an expensive restriction upon the pursuit of building dwelling houses, as to greatly curtail if not totally prohibit it. I shall not characterize this as begging the question, but it does impoverish the majority position so greatly that it is left without support. A sufficient temporary barricade could have been put over the doorway at a cost too insignificant to mention— probably for fifty cents. A temporary door could have

been placed in the doorway at about the same cost to the builder. A temporary barricade or temporary door in no way could have impeded the builder in completing the structure, so that no question is presented concerning balancing the risk to children with the utility of the dangerous condition. Vol. II, Restatement of the Law Torts, Negligence §339, Comment on clause (d), pp. 925, 926.

Builders and all others owe a duty to protect the little children of the neighborhood where they are constructing a building or other improvement. A failure reasonably to discharge this duty is negligence. The terror screams from the little boy reached the ears of the mother in her home across the street, and true to the mother instinct of all living things, particularly of human beings, she rushed to the rescue of her terrified child—and received injuries that caused her death. Every requirement of the law was fully met by the complaint. It was error to sustain the demurrer thereto. The excellent opinion of Martin, J. in the Appellate Court, 104 N. E. (2d) 395 is a proper and well supported exposition of the law applicable to the facts contained in the complaint.

The petition to transfer should be denied.

## DISSENTING OPINION

EMMERT, C. J.—I concur with the reasoning of my Brother Gilkison in his dissent, but I think the matter is of such great importance for the future safety of life and limb of the children of this state that a separate opinion is justified. I believe that our dissenting opinions in *Plotzki* v. *Standard Oil Co.* (1950), 228 Ind. 518, 522, 527, 92 N. E. 2d 632, 634, 636, are correct, and they should have been made the law in this appeal. My observation has been that the Plotzki case was not

received with favor by the bench and bar of this state, and eventually it will be overruled.[1]

The error assigned here is the sustaining of the defendant's demurrer to the complaint. "Under the present liberal rules of pleading, . . . the demurrer admits not only the facts directly and specifically alleged in the complaint but also all facts that can be implied from other allegations by reasonable and fair intendment. *Domestic Block Coal Co.* v. *DeArmey* (1913), 179 Ind. 592, 100 N. E. 675, 102 N. E. 99; *Vandalia Coal Co.* v. *Coakley* (1915), 184 Ind. 661, 111 N. E. 426." *Rochester Bridge Co.* v. *McNeill* (1919), 188 Ind. 432, 439, 122 N. E. 662. Admittedly a stepladder in and of itself is not a dangerous instrumentality but it can easily become one when it is placed on an unstable or insecure foundation.

The complaint alleged the flooring had not been placed on the floor joists and the ladder extended to the joists

1. See "Landowner's Liability for Infant Drowning In Artificial Pond," 26 Ind. L. J. 266 (1951). In this article the writer approved the statement of the law on infant trespassers contained in 2 Restatement, *Torts* §339, which is stated in full in the dissent of my Brother Gilkison. The writer then stated as follows:

"Measured against the foregoing four-part formula for determining liability, it seems erroneous to say that the complaint in the *Plotzki* case failed to state a cause of action. There was no dispute that the defendant should have known that children were likely to come to its dangerous pond. The issue was whether the child knew or should have known of the danger, and it is on this point that the court denied recovery. . . .

"Entirely apart from the questionability of the authority for the *Plotzki* holding, it is unsound for other more cogent reasons. In the first place an application of the premise that all children appreciate the perils of water would necessarily preclude liability in every case of drowning where the child had seen and voluntarily entered or played near water, even if he were rightfully at the place where the drowning occurred, since contributory negligence would be established as a matter of law. This, of course, has not been the law of Indiana. A far more important objection lies in the undeniable facts of life: if automobile accidents are excluded, drowning is perhaps the largest single cause of accidental death to children between the ages of one and fourteen in the United States. The inference is that children do *not* appreciate the dangers of water."

of the second floor which also had no flooring thereon. The three brothers were quite young, the eldest, Anthony, being only 6 years of age, Clarence being 5 years of age, and John, who became pinioned upon the stepladder as he attempted to climb to the second floor, was only 3 years of age. They lived across the street and played around the building while it was under construction and while it was being worked upon by appellees' servants, and other children from the neighborhood had done the same. The demurrer admits that the appellees had notice that the building was attracting these children and no effort was made to warn them away. No workmen were about the house the Monday morning when the accident happened. When the 3-year-old boy became pinioned on the stepladder as he was climbing to the second floor his screams attracted his mother, who was great with child, and she came across the street and into the house to rescue him. While laboring under the excitement of the occasion and her awkward condition, she lost her footing in her attempt to effect the rescue, and fell astride a floor joist, which caused her fatal injury.

The sole question for this court to decide is whether under these circumstances we should hold that the appellees were under a duty to use due care to protect a three-year-old boy from danger. If the majority of this court had held appellees under this duty, then the breach thereof alleged in the complaint would be the failure to use reasonable care in barricading the entrance. This issue could have been submitted to a jury for its determination as to whether or not appellees had used due care in this respect.

The so-called attractive nuisance doctrine has been a misnomer from its inception. Simply because an infant is attracted by something dangerous on an occupant's

land does not make the instrument a nuisance. "Thus, the early decisions, which held that the landowner's interest in doing as he pleased upon his own land, was of greater value than the life and limbs of even a morally innocent intruder, have yielded to a change of public opinion which places a higher value on life and limb than upon the traditional dominional prerogative of a landowner. Yet the processes by which this change of value has forced the creation of a new standard by which the conduct of landowners is judged, has been one of continual fiction and false analogies. It is only recently that a few courts have had the temerity to base such decisions upon the relative values of the interests concerned. And even within the last year one of the ablest and most enlightened of American judges has denied recovery in a case [Holmes, J., in *United Zinc & Chemical Co.* v. *Britt* (1922), 268 U. S. 280, 42 S. Ct. 299, 66 L. Ed. 615][2] of an infant trespasser because he did not come within the exact terms of a fiction, whose only purpose was to protect just such person as infant trespassers, while appearing to adhere to archaic precedents which denied them protection." Bohlen, Studies in the Law of Torts, pp. 611, 612.

Of course "the business of life must go on," but the business of life would not stop if this court would hold appellees were under the duty to use due care to keep these children from getting hurt in this partially constructed house. "If the landowner has expressly solicited children to come upon his land, due care requires that their visit be anticipated and prepared for, and the premises made safe for them. If children are in the habit of visiting the land, their presence should similarly be anticipated, and some provision may have

---

2. Mr. Justice Holmes is not noted for his understanding of children. He had no children. He also reflects the harshness of the early common law in which he was a great authority.

to be made for their safety." Hudson, The Turntable Cases in the Federal Courts, 36 Harv. L. Rev. 826, 848. A dozen old rough boards and a few nails should have prevented these boys from entering the house while the workmen were away. Such precautions would not stop house building anywhere, nor would it cause the builders to go bankrupt, nor materially lessen their profits.

It should be apparent that society has a great interest in protecting the safety of our children and their parents. "This has been criticized as an exhibition of excessive humanitarianism, but it seems rather to be a natural response to a public sentiment which is justified by the grave risk to a numerous and socially important class of citizens and the comparatively slight burden placed upon the landowner." Bohlen, Studies in the Law of Torts, p. 190. See also Harper, Law of Torts, §§93, 94. The majority opinion by the Appellate Court in this appeal was well considered and correct. *Neal* v. *Home Builders, Inc.* (1952), 104 N. E. 2d 395.[3] This appeal should not have been transferred.

## ON PETITION FOR REHEARING

BOBBITT, J.—As appellant points out in his petition for rehearing, an amendment by interlineation to the amended complaint was inadvertently left out of subparagraph (a) of numerical paragraph 8 of that part of the complaint appearing in the opinion. This paragraph with the interlineations as they appear on p. 13 of appellant's brief is as follows:

"(a) In failing to use reasonable care in barricading the entrance of the semi-completed

3. The decision of the Appellate Court was reviewed and approved in 27 N. Y. U. Law Rev. 722.

dwelling house as herein described when they knew, or in the exercise of reasonable care should have known, that children of immature years and more particularly the children of plaintiff's decedent were attracted to the semi-completed dwelling house for the purpose of play and sport, and were at the time and place of injury to plaintiff's decedent accustomed to using the semi-completed dwelling house as a place of sport and play,—*said defendants and each of them knew, or in the exercise of reasonable care, could have known, that the said semi-completed house was in fact inherently dangerous to such children by reason of the many pitfalls and opportunities for them to climb and fall, and otherwise injure themselves without knowing of the danger because of their immature years.*"

We were fully aware of this amendment at all times during the consideration of the case. The addition of the italicized words above does not change the specific act of negligence charged.

On p. 167 of the opinion, 232 Ind. 160, 111 N. E. 2d 280, 284, we said:

"The sole act of negligence here charged is: The failure of appellees *under the circumstances as set out in the amended complaint* to 'barricade the entrance to the semi-completed dwelling house' described in said complaint." (Italics added.)

The circumstances referred to above included all those recited in the complaint as finally amended before trial.

Appellant admits in his petition for rehearing that a stepladder is not "a dangerous instrumentality" or an "attractive nuisance" and affirms the position taken by him in his brief and in oral argument, that neither a semi-constructed dwelling house nor a stairway is an "attractive nuisance" or a "dangerous instrumentality."

Nothing appears in the petition for rehearing which requires us to change our opinion.

Petition for rehearing denied.

Emmert, C. J. and Gilkison, J. dissent.

NOTE.—Reported in 111 N. E. 2d 280 and 111 N. E. 2d 713 on petition for rehearing.